UNITED STATES of America

v.

Bernardo L. ZABALAGA, Appellant.

No. 86-3055.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 15, 1987.

Decided Dec. 11, 1987.

G. Allen Dale, Washington, D.C. (appointed by this Court), for appellant.

Kathryn Myerscough, Asst. U.S. Atty., of the Bar of the Supreme Court of Missouri, pro hac vice, by special leave of court, with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Zinora M. Mitchell, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge, MIKVA and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Bernardo L. Zabalaga was convicted by a jury of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (1982). Zabalaga raises three issues on appeal. First, he argues that, because the cocaine was seized pursuant to an illegal impoundment of a car and a further illegal search of the car and a safe found therein, the evidence should have been suppressed. Second, he contends that, because the evidence on which his conviction was based was insufficient to establish constructive possession, judgment of acquittal was improperly denied. Finally, Zabalaga argues that the District Court erred in its jury instructions on reasonable doubt. We conclude that Zabalaga had no legitimate expectation of privacy in either the car or the safe therein, that there was sufficient evidence for a reasonable juror to find constructive possession of the seized cocaine and that the jury instructions did not constitute reversible error. Therefore, we affirm the conviction.

## I. BACKGROUND

On February 15, 1986, at approximately 3:00 a.m., Secret Service Special Agent John McClellan arrested Zabalaga in "Cafe Med," a nightclub in the Georgetown neighborhood of Washington, D.C., on an arrest warrant from Virginia for an alleged violation of the National Firearms Act.

While McClellan and Zabalaga were still inside the nightclub, Wilfredo Prieto-Rivera[1] approached and said, "Give me the keys to the car, man." Transcript ("Tr.") of Hearing (June 17, 1986) at 19. Zabalaga did not respond to Prieto-Rivera; however, McClellan subsequently took the car keys from Zabalaga during a search incident to his arrest.

After obtaining the car keys, McClellan determined that they belonged with a 1986 Dodge hatchback that was parked outside Cafe Med. Upon questioning, both Zabalaga and Prieto-Rivera denied ownership of the vehicle; Prieto-Rivera, however, persisted in his demands for the keys. Both Zabalaga and Prieto-Rivera also refused to consent to a search of the automobile, but neither asserted a possessory interest in or right to the vehicle or the contents therein.

Before leaving the area where the car was parked, McClellan "peered into the parked vehicle and saw that it contained pieces of luggage and several large household trash bags filled with clothing and other articles." *United States v. Zabalaga*, Crim. No. 86–0171, op. at 2 (D.D.C. June 23, 1986) [hereinafter *Zabalaga*]. Upon seeing "a car filled with personal property," *id.*, McClellan was faced with a curious situation: "Both the defendant, who originally possessed the car keys, and the co-defendant, who demanded the keys, denied ownership of the vehicle, and neither asserted a possessory right or interest in the vehicle or any contents of the vehicle." *Id.* Under these circumstances, McClellan decided to impound the vehicle "for safekeeping to allow ... time to determine the lawful owner, to protect the vehicle, and to preserve the contents." *Id.* at 3.

Following impoundment, officers of the Metropolitan Police determined that the car was the property of the Thrifty Rental Company. On February 16, 1986, the contents of the automobile were inventoried. Among the personal items listed were photographs of Zabalaga and letters addressed to him. In the unlocked glove compart-

---

**1.** Prieto-Rivera was also named in the indictment charging Zabalaga. However, because his whereabouts have been unknown since February 15, 1986, Prieto-Rivera was not tried with Zabalaga.

ment, the inventory search produced Bolivian currency, a car rental receipt, and a clear plastic bag containing white powder that tests later revealed was cocaine. In addition, a locked metal safe was found in the rear of the hatchback. The safe was not opened at this time.

The rental receipt taken from the glove compartment indicated that Carlton Hughes was the lessee of the car. After obtaining Hughes' address from the rental company, McClellan and another agent found Hughes at his place of business. Hughes told the officers that Prieto-Rivera was a part-time employee, and that the car had been rented for Prieto-Rivera's use during and after work. Hughes said that he had not seen or heard from Prieto-Rivera since February 15, 1986. Hughes also indicated that, although he knew Zabalaga, he had never given Zabalaga permission to use the rented car. The officers told Hughes that the car had been impounded, that Zabalaga had been arrested, and that they wanted Hughes to consent to a search of the car for contraband. Hughes was not told that the car had already been inventoried and that drugs and a locked safe had been found. He was told, however, that he need not consent. The trial court found that Hughes fully understood his rights and that he was in no way threatened or coerced by the officers. *Zabalaga,* op. at 4. Hughes consented to the search.

On February 25, 1986, McClellan had the safe drilled open. The safe contained a wallet, photographs of Zabalaga and letters addressed to Zabalaga. The wallet contained numerous items bearing Zabalaga's name or picture, including a Social Security card and a membership card for Cafe Med, and a slip of paper showing the combination to the safe. In addition, the safe contained Prieto-Rivera's passport, more Bolivian currency, a box of ammunition, a hand-held microscope and approximately eleven ounces of white powder, in eleven clear plastic bags, that later tested positive for cocaine. The packaging of this cocaine was similar to that of the cocaine discovered in the glove compartment.

## II. FOURTH AMENDMENT CLAIMS RAISED AT THE SUPPRESSION HEARING

Prior to the trial on the criminal charge, Zabalaga moved to suppress as evidence all items that had been seized from the locked safe, on the ground that the warrantless search was not supported by probable cause and that the items seized were the fruits of an illegal search. Only two witnesses testified at the suppression hearing, John McClellan and Carlton Hughes; the defendant was not called to testify in his behalf. Following the hearing, the trial judge ruled that "Zabalaga had no legitimate expectation of privacy in either the car searched or the items seized." *Zabalaga,* op. at 6. Consequently, the items seized from the safe were admitted during the trial of Zabalaga on the criminal charge.

The appellant claims that the District Court erred in denying his motion to suppress the evidence taken from the car, because the automobile and its contents were seized and searched in violation of the Fourth Amendment. On this point, there are several potentially troublesome issues in this case, including: the legality of the impoundment and inventory search of the rental car; the legality of the warrantless search of the safe *if* the impoundment and inventory search were legally infirm; and the materiality of the "consent" given by Hughes *after* police officers already had surveyed the contents of the automobile. But we need not reach these questions because the appellant cannot survive the required threshold inquiry regarding his claimed expectation of privacy.

The question here is "whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." *Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 429, 58 L.Ed.2d 387 (1978). In *Rakas,* after receiving a robbery report, the police stopped the suspected getaway car, which the owner was driving and in which the defendants were passengers. In their search of the car, the police found a box of rifle shells in the glove compartment and a sawed-off rifle under a passenger seat.

Following their arrest, the defendants moved to suppress the rifle and shells on Fourth Amendment grounds, but the state court ruled that the defendants lacked standing to object to the lawfulness of the search of the car. The Supreme Court affirmed, first observing that "petitioners ... were passengers occupying a car which they neither owned nor leased," 439 U.S. at 140, 99 S.Ct. at 429, then holding that "petitioners' claims must fail" because "[t]hey asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized." *Id.* at 148, 99 S.Ct. at 433. Absent such interests in the automobile or its contents, the petitioners had failed to demonstrate a *"legitimate* expectation of privacy protected by the Fourth Amendment." *Id.* at 150, 99 S.Ct. at 434 (Powell, J., concurring) (emphasis in original).

We can discern no meaningful distinction between *Rakas* and the instant case. Under *Rakas,* the appellant bears the burden on a motion to suppress of establishing not only that the search was unlawful, "but also that he had a legitimate expectation of privacy." *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). In the instant case, the District Court found that:

> Zabalaga was not the owner or lessee of the car, nor was he given permission to drive it by Carlton Hughes. At no time has he asserted a possessory interest in the vehicle or the items seized. He could have done so during his initial arrest or the subsequent questioning about the vehicle.

*Zabalaga,* op. at 6. Apart from his failure to establish any interest in the car, there also is no evidence that the appellant drove the car or that he had permission to do so. And, while disclaiming ownership of the vehicle at the time of his arrest, the appellant never asserted any claim to the personal goods that were stored in the car. Indeed, Zabalaga never claimed that he had permission to put his belongings in the car. Finally, there were no identifying markings on either the personal goods in the car or

on the safe, that would suggest that Zabalaga had a legitimate expectation of privacy in either the car or the safe therein. Given these circumstances, it cannot be found that the trial court erred in denying appellant's motion to suppress.

### III. CLAIMED ERRORS WITH RESPECT TO THE CONVICTION FOR POSSESSION WITH INTENT TO DISTRIBUTE

As a consequence of the District Court's ruling at the conclusion of the suppression hearing, the Government was permitted to introduce the items from the safe during the trial on the criminal charge. Relying on this and other evidence and testimony offered at trial, the jury found Zabalaga guilty of possession with an intent to distribute cocaine.[2] The appellant now claims that, even if the evidence from the safe was properly admitted, the conviction should be reversed because (1) the evidence before the jury was insufficient to support a charge of possession and (2) the trial court erred in its instructions on reasonable doubt. We will consider these claims in turn.

### A. *Evidence of Constructive Possession*

■ The appellant has argued that the evidence before the jury was insufficient to support a charge of illegal possession because no evidence was presented to indicate that the appellant had control over the items in the safe. We can find no merit in this claim. The facts developed at trial revealed that Zabalaga had the keys to the locked car in which the drugs were found; his wallet and other personal belongings were in the safe; the safe's combination was on a card in his wallet; his clothing and other personal belongings were in the passenger area of the vehicle; and it appeared that the appellant had actual control over the car and the drugs therein, for only he had keys to the car.

On this record, we think that it is plain that the Government offered adequate evidence to establish that the appellant constructively possessed the cocaine. In *United States v. Pardo,* 636 F.2d 535, 548 (D.C.

---

**2.** Although Zabalaga did not testify at the suppression hearing, he did testify during the trial on the criminal charge.

Cir.1980) (quoting *United States v. Davis*, 562 F.2d 681, 684 (D.C.Cir.1977)), we held that "[t]o prove constructive possession of narcotics the Government must show that the defendant was in a position or had the right to exercise dominion and control over the drugs." On the evidence here, "a jury clearly could have concluded that [Zabalaga] knew what was in the [safe] and was in a position to exercise some control over it." 636 F.2d at 548.

**B.  *Jury Instructions***

Finally, the appellant claims that the trial court failed to instruct the jury properly on the Government's burden to prove the appellant's guilt beyond a reasonable doubt. The Government must prove all the elements of a crime "beyond a reasonable doubt," *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), and Zabalaga argues that the trial court's jury instructions may have confused the jury as to its proper role in examining the evidence. We conclude that there was no reversible error.

In his opening instructions to the jury, after indicating that the Government must prove its case beyond a reasonable doubt, the trial judge stated:

> Your function is to view or review, evaluate and assess the facts and determine whether or not the facts in your judgment pursuant to the instructions of law as given by the Court weigh in favor of the defendant's guilt or against the defendant's guilt.

Tr. (July 9, 1986) at 9. Defense counsel objected and the trial judge corrected himself by instructing:

> Ladies and Gentlemen, this is a criminal proceeding and not a civil proceeding. And in this case, the Government, as I indicated earlier in my opening remarks, the Government must prove its case beyond a reasonable doubt, and at the appropriate time, I will define for you what is meant by a reasonable doubt.
>
> The defense does not have to prove its innocence. As a matter of fact, the defense does not have to—the defendant through his counsel does not have to offer any defense whatsoever.

*Id.* at 11–12. In his closing instructions, the trial judge gave a lengthy explanation of the reasonable doubt standard. That explanation was followed by a conclusion that included the following statement:

> In other words, you have two explanations of the events surrounding the bringing of this indictment, and it is your responsibility as jurors to consider and weigh the evidence that has been presented by both sides, to weigh it objectively, impartially, without passion, without prejudice.

Tr. (July 10, 1986) at 523. Defense counsel made no objection to this portion of the closing instructions.

In determining whether trial instructions improperly diminished the Government's burden of proving guilt, the instructions must be examined as a whole and in the totality of the circumstances. *United States v. Lemire*, 720 F.2d 1327, 1340 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984); *United States v. Baker*, 693 F.2d 183, 187 (D.C.Cir.1982). Corrective instructions may make previous errors harmless. *Greer v. Miller*, — U.S. —, 107 S.Ct. 3102, 3109, 97 L.Ed.2d 618 (1987). Furthermore, a party must object to allegedly erroneous instructions before the jury retires. FED.R.CRIM.P. 30. If a party fails to object, only plain errors affecting substantial rights may be overturned on appeal. FED.R.CRIM.P. 52(b). The "plain error" exception is only applied in cases where "a miscarriage of justice would otherwise result." *Baker*, 693 F.2d at 187 (quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)).

We conclude that the opening jury instructions, taken as a whole and viewed in light of the curative instruction given after the objection, were not erroneous. As for the closing instructions, we review them under the plain error doctrine because defense counsel did not object to the alleged error. Such review reveals no reversible error. The closing instructions fully define the burden on the Government to prove guilt beyond a reasonable doubt. The reference to weighing the evidence was only a minor part of lengthy and clear

instructions. There is absolutely no reason to believe that the jurors would be confused about the Government's responsibility in this case.

### IV. CONCLUSION

Having fully considered all of the appellant's arguments, we conclude that he lacked a legitimate expectation of privacy necessary to assert a Fourth Amendment claim, that there was sufficient evidence to support a conviction, and that there was no reversible error in the jury instructions. Accordingly, the conviction is affirmed.

*So Ordered.*