**UNITED STATES of America**

v.

**Wilson MITCHELL, Appellant.**

**UNITED STATES of America**

v.

**Ricky ZOLLICOFFER, Appellant.**

**Nos. 90–3084, 90–3273.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 13, 1991.

Decided Dec. 27, 1991.

James L. Kelley (appointed by this court) for appellant Mitchell.

Patricia Dunn, Washington, D.C. (appointed by this court) for appellant Zollicoffer.

Shanlon Wu, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, and Thomas C. Black, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee. Thomas J. Tourish, Jr., Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before BUCKLEY and WILLIAMS, Circuit Judges, and ALAN D. LOURIE,[*] Circuit Judge, U.S. Court of Appeals for the Federal Circuit.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Wilson Mitchell and Ricky Zollicoffer were convicted of possession of cocaine with intent to distribute, and also of use of a firearm during a drug trafficking crime. They argue that the trial court erred by not suppressing evidence seized during a traffic stop of a car driven by Mitchell in which Zollicoffer was a passenger. Mitchell further asserts that the trial court failed to state its "essential findings" in ruling on the defendants' motion to suppress, as Federal Rule of Criminal Procedure 12(e) requires. We reject these claims and affirm the convictions.

## I. BACKGROUND

At approximately 7:00 pm on November 6, 1989, Mitchell was driving his mother's car north on 16th Street N.E., with Zollicoffer in the passenger seat. Officer Mark Stone of the D.C. Metropolitan Police Department observed the car as it came up the street. He testified that it was moving at a "high rate of speed" and then suddenly stopped and turned sharply off 16th Street without signaling. He also testified that he thought the car turned because the driver noticed Stone and another officer parked on motor scooters. Stone gave chase and tried to get the driver's attention by sounding his horn and waving his arms. After thirty or thirty-five seconds, the car pulled over on Queen Street, N.E.

During the chase, Stone had called for assistance; as the car stopped, other officers arrived on the scene. Stone testified that he went to the driver's window and asked for Mitchell's license. At that point he had not decided whether to issue a citation for the offenses. As Stone returned to his vehicle to run a check on the car, other officers secured the vehicle. One of the officers providing back-up was Frederick Lewis, an eighteen-year veteran of the Metropolitan police force. Lewis testified that he approached the car from the front and went around to the passenger side of the car. There, he observed Zollicoffer through the window moving both his hands inside his coat as he leaned forward.

Lewis testified that these actions made him believe Zollicoffer had a weapon. He therefore opened the passenger door and

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

asked Zollicoffer to "step[ ] out of the car, man, you're making me nervous." Zollicoffer complied. Lewis asserted that he saw that Zollicoffer was "sweating real bad," and that he asked Zollicoffer why he was sweating so much. Zollicoffer responded that he was hot. Lewis told Zollicoffer "if you're hot why don't you take your coat off?" Zollicoffer did so and Lewis noticed a bulge that he believed was a gun under Zollicoffer's sweater above the belt-line. He ordered Zollicoffer to put his hands on the car and pulled a loaded .357 magnum pistol out of Zollicoffer's pants and said "May Day." Other officers then ordered Mitchell out of the car and searched him, discovering a .38 caliber handgun concealed in his pants. Officers also discovered $1,500 on Zollicoffer's person. Both men were arrested and taken to the Fifth District police station.

The defendants' version of these events differ somewhat. Zollicoffer testified that another officer, one with a beard, came to his window after Stone had returned with the license, registration, and keys, and after Mitchell had started the car to leave. This officer tapped on the window and asked Zollicoffer to get out. He did not say anything about making him nervous, but he did ask why Zollicoffer had a coat on. The officer then patted down Zollicoffer's coat, told him to take it off, searched it, and then searched his person, finding the gun. Zollicoffer claims he was not nervous or moving furtively. Mitchell essentially corroborated Zollicoffer's version. He denied speeding. At trial, the government called a bearded officer (Vaughn) who testified that Lewis handed him Zollicoffer's coat and that he patted the coat down as Lewis found the gun in Zollicoffer's pants.

After Mitchell and Zollicoffer had left the scene, officers searched the car. In a locked tool compartment set in the hatchback portion of the car, police discovered 55.11 grams of cocaine, some in plastic packets, some wrapped in napkins. At the station, both Mitchell and Zollicoffer made statements admitting ownership of the drugs and claiming that they had the guns for protection. At trial Zollicoffer denied ownership of the drugs, testifying that the police told him he would get off lightly if he said the drugs were his.

Mitchell and Zollicoffer moved to suppress their statements to the police and all tangible evidence recovered during the stop. After a hearing at which the court heard the testimony described above, the government argued that the defendants lacked credibility and that the court should reject their testimony. The court granted the motion to suppress Mitchell's statement, denied it in Zollicoffer's case, and denied both defendants' motions to suppress the tangible evidence. The court found that

> so far as his being brought out of the car and when both of them—certainly they had a right when they observed that the passenger was making gestures that put the policeman on notice that something was going on and they'd better check it out; when they got Mr. Zollicoffer out of the car and found the gun they had every reason to thereafter go to the driver and they did so and found the gun on him.

Transcript of Suppression Hearing, Jan. 9, 1990, Part II at 13.

## II. DISCUSSION

Both Mitchell and Zollicoffer argue that the trial court erred in denying their motions to suppress the physical evidence entered against them. They claim that the search of Zollicoffer was without justification and violated his Fourth Amendment rights. Therefore, none of the evidence subsequently discovered was admissible against them. Zollicoffer also challenges the constitutionality of the warrantless search of the car, arguing that it cannot be justified as a search incident to arrest or as an inventory search. Mitchell joined this part of Zollicoffer's motion at oral argument. Finally, Mitchell urges reversal of his conviction, or a remand, on the ground that the trial court violated Federal Rule of Criminal Procedure 12(e) by failing to state its essential findings of fact on the record when it denied his motion to suppress. We will consider each of these challenges in turn.

## A. Search of Zollicoffer

Mitchell and Zollicoffer argue that the police lacked any reasonable suspicion that would justify ordering Zollicoffer out of the car and searching him. Nor, in their view, could the police order Zollicoffer out of the car as part of a traffic stop. Further, Mitchell argues that the whole stop was a sham; the defendants were stopped on the basis of a mere suspicion that the car was stolen, and nothing more. The government rejects these claims and also avers that Mitchell lacks standing to challenge the search of Zollicoffer and that he failed to raise his argument that the initial stop was a sham before the trial court. Because Zollicoffer's movements in the car gave Officer Lewis a reasonable suspicion that Zollicoffer was armed and therefore dangerous, we hold that his order to Zollicoffer to exit the car and remove his coat were justified by this reasonable fear. We do not take up the government's other arguments.

 The Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one. *See United States v. Montgomery,* 561 F.2d 875, 879–80 (D.C.Cir.1977). Here, Officer Stone observed two violations: speeding on 16th Street and failing to signal when the car made a sharp turn off of that street. That Stone had not decided whether he would cite Mitchell for these violations does not vitiate the justification for the initial stop. Nor does it matter that Stone also planned to run a license check to see if the car was stolen. We have noted that "[e]ven a relatively minor offense that would not of itself lead to an arrest can provide a basis for a stop for questioning and inspection of the driver's permit and registration." *Id.* at 880; *see also United States v. Cummins,* 920 F.2d 498, 501 (8th Cir.1990) ("otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity"), *cert. denied,* — U.S. —, 112 S.Ct. 428, 116 L.Ed.2d 448, 449 (1991).

 Even if we agreed that the stop was a mere pretext for a search, that does not mean that a violation of the Fourth Amendment occurred. It is well settled that a court must look to objective circumstances in determining the legitimacy of police conduct under the Fourth Amendment, rather than an officer's state of mind. *See, e.g., United States v. Villamonte–Marquez,* 462 U.S. 579, 584 n. 3, 103 S.Ct. 2573, 2577 n. 3, 77 L.Ed.2d 22 (1983) (stop of boat justified for registration inspection even though officers intended to search for drugs); *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978) (officer's intent does not invalidate search "as long as the circumstances, viewed objectively, justify that action"). Here, the objective circumstances clearly justified stopping the car. The trial court credited Stone's testimony that the car was speeding and had made a turn without a signal, despite the conflict with defendants' story. This finding is not clearly erroneous, *see United States v. Hinckley,* 672 F.2d 115, 119 (D.C.Cir.1982), and we do not disturb it.

Furthermore, in the course of a lawful stop, a police officer may conduct a reasonable search for weapons for his own protection

> where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.

*Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). The officer may search for weapons only, and his search must be confined by "the exigencies which justify its initiation." *Id.* at 25–26, 88 S.Ct. at 1882. In reviewing such searches, we apply an objective test based on the facts available to the officer at the time of the search:

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Id.* at 27, 88 S.Ct. at 1883. He must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880.

█ Here, Officer Lewis's conduct falls within the purview of *Terry.* Lewis was called to assist in stopping a car that was apparently fleeing from the police. In this uncertain and potentially dangerous situation, he walked to the car and observed Zollicoffer moving both his hands under his coat in a manner suggesting that he was hiding a gun. Based on his experience, these facts led him to believe that Zollicoffer was armed. We do not consider this judgment unreasonable. *Terry* grants broad discretion to the police when they act to protect themselves. We have cautioned that a " 'reasonable' reaction in this context ... turns on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *United States v. White,* 648 F.2d 29, 40 (D.C.Cir.) (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)), *cert. denied,* 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233, 235 (1981). Under this standard, we do not find the actions of the police in ordering Zollicoffer out of the car and searching him for a weapon to be unreasonable within the meaning of the Fourth Amendment. We also note that the trial judge, through her decision rejecting defendants' challenge to the search of Zollicoffer, resolved the dispute in testimony between the police officers and the defendants in favor of the officers. We have no basis for disagreeing with that decision.

B. Search of the Car

Both Mitchell and Zollicoffer challenge the subsequent search of the car by the police. Zollicoffer argues that the warrantless search of the hatchback portion of the car violated his Fourth Amendment rights because the search falls within none of the known exceptions to the warrant requirement. Mitchell joined Zollicoffer's motion at oral argument. The government claims that the search may be justified either as a search incident to arrest or as an inventory search. It also argues that Zollicoffer failed to raise an objection to the car search before the trial court. While we are skeptical of the government's rationales for its post-arrest search of the car, we deny these claims because Mitchell failed to raise the issue of the car search at the suppression hearing and because irrefutable evidence in the record establishes that Zollicoffer lacked a legitimate expectation of privacy in the car or in the drugs seized from it.

1. *Waiver*

Federal Rule of Criminal Procedure 12(b)(3) requires that motions to suppress evidence be made before trial. Further,

[f]ailure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

Fed.R.Crim.Pro. 12(f). According to the Advisory Committee Notes accompanying the 1974 Amendment to Rule 12, "[s]ubdivision (b)(3) makes clear that objections to evidence on the ground that it was illegally obtained must be raised prior to trial.... whatever the claimed basis for the application of the exclusionary rule of evidence may be."

In applying Rule 12, we have held that while "a pretrial motion need not state explicitly the grounds upon which a motion is made, it must contain facts and arguments that make clear the basis of defendant's objections." *United States v. Bailey,* 675 F.2d 1292, 1294 (D.C.Cir.), *cert. denied sub nom. Walker v. United States,* 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982). In *Bailey,* defendants challenged joinder before their trial on the ground that joinder would cause prejudice. The trial court rejected this argument, and on appeal they challenged joinder on the ground that they had not participated in the same transaction or series of transactions, as required by Rule 8(b) of the Federal Rules of Criminal Procedure. As defendants had not

made the Rule 8(b) argument at trial, but relied solely on the prejudice argument, we did not allow them to make the Rule 8(b) argument on appeal. We noted that Rule 12 requires that the district court have the opportunity to rule on the merits of an issue before an appeal. "Unless the motion clearly indicates the basis for objection, the District Court cannot consider that particular argument...." *Id.* Other circuits have employed a similar standard. *See, e.g., United States v. Neumann,* 887 F.2d 880, 884–86 (8th Cir.1989) (en banc) (waiver because defendant argued before trial that warrant was unsupported by probable cause, on appeal asserted warrant and search were overbroad), *cert. denied,* —— U.S. ——, 110 S.Ct. 2210, 109 L.Ed.2d 536 (1990); *United States v. Woodall,* 938 F.2d 834, 836 (8th Cir.1991) (waiver when defendant moved to suppress "physical evidence," on appeal claimed that stop preceding search was "pretextual").

■ Under this standard, Mitchell waived the car search issue. While defendants need not articulate the entire body of law relevant to their claim, they must state the basis of their objection to the admission of the evidence. Prior to trial, Mitchell filed a "Motion to Suppress Evidence Illegally Seized and Statements." Mitchell described at length the facts surrounding the stop and search of Zollicoffer. He linked his challenge of the car search to the putative illegality of the search of Zollicoffer. Specifically, Mitchell contended that

[t]here was no reason imaginable nor any reason legally that the officers in this case searched and arrested the two defendants. In addition, there was no probable cause to search this automobile that belonged to the defendant Mitchell's mother. In addition, because the arrest and search was without probable cause and not justified on the basis of articulable suspicion any evidence seized and any statements obtained as a result of the stop of the defendant must be suppressed.

Motion to Suppress Evidence Illegally Seized and Statements at 3 (citation omitted). While Mitchell now challenges the search on the ground that it lacked a warrant, his motion to suppress asserted only a lack of probable cause; neither it nor the record of the suppression hearing contains any discussion of whether a warrant was necessary.

■ The only mention by Mitchell's counsel of the absence of a search warrant for the car was made in the following exchange with the trial judge, which took place at the outset of the trial:

MR. JOHNSON: Your Honor, I have a preliminary matter. In light of the fact that the Court ruled in terms of probable cause as to the arrest and as to both Defendants having a gun, the Defendant's position was and is that as a result of that, that did not give the Government probable cause to seize the car. I don't intend to go into it because I suppose the Court has a position about it, but I just needed to call the Court's attention to the fact that our position is that even though the Court ruled that it was lawful for them to make the search and arrest, our contention is that they should have had a warrant to search the car. I just want that for the record, and I would appreciate a ruling from the Court on that.

THE COURT: Your motion is denied.

Trial Transcript, Jan. 10, 1990, at 2. At most, this exchange might be characterized as an untimely motion by Mitchell to suppress the evidence based on a new objection to the search, and the denial of that motion by the court. A trial court may hear an untimely motion to suppress in "unusually meritorious cases," and the court's decision whether to hear such a motion is disturbed only for clear error. *See United States v. Mangieri,* 694 F.2d 1270, 1283 (D.C.Cir.1982). Here, Mitchell offered no evidence of "unusually meritorious" circumstances that would warrant consideration of such a motion out of time, and we see no error in its denial. We conclude, then, that Mitchell failed to preserve his right to object to the search as warrantless.

■ Zollicoffer, however, did raise a challenge to the car search, and he did so with some precision. In his brief support-

ing his motion to suppress, Zollicoffer argued that:

> 5. A short time [after the search of Zollicoffer], police also recovered a quantity of controlled substance from an [sic] tool kit compartment located in the rear of the vehicle.

> 5. [sic] It is clear that *no* warrant is present to justify this search. Nor was one ever sought.

Memorandum of Points and Authorities in Support of Motion of Defendant to Suppress Tangible Evidence at 2 (emphasis in original). This meets the requirements of Rule 12 and our case law interpreting it. The motion is somewhat ambiguous as to whether the lack of a warrant relates to the entire search or merely to the search of the car. Nevertheless, Zollicoffer's motion includes the facts and the law necessary to establish an objection to the evidence.

### 2. *Zollicoffer's Expectation of Privacy*

█ In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court set out the standard for lower courts to apply in determining whether a defendant had an expectation of privacy sufficient to allow him to maintain a Fourth Amendment challenge. The defendants in *Rakas* were driving a pick-up truck that they did not own. The police stopped the truck, ordered the occupants out, and, on searching the vehicle, discovered a rifle and shells. The defendants did not admit ownership of the weapon.

The Court stated that the question of when a defendant may challenge a search turns on "whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." *Id.* at 140, 99 S.Ct. at 429. The Court found that the defendants could not challenge the search because they "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized." *Id.* at 148, 99 S.Ct. at 433. A passenger in a car does not possess such an interest simply because he is lawfully present in the automobile. Defendants must adduce facts demonstrating a *"legitimate* expectation of privacy protected by the Fourth Amend-

ment." *Id.* at 150, 99 S.Ct. at 434. (Powell, J., concurring) (emphasis in the original).

Relying on *Rakas,* this court, in *United States v. Zabalaga,* 834 F.2d 1062 (D.C.Cir. 1987), upheld the denial of a motion to suppress evidence seized from a locked safe found in a car when defendants denied ownership of the car or its contents. Evidence found within the safe linked one of the defendants to drug trafficking. Defendants failed to offer proof that they owned the car, that they had permission to drive the car or to put their possessions in it, that they owned the contents of the car, or that there were any markings on the contents that would indicate their ownership. Thus, they did not meet their burden to show the existence of a legitimate expectation of privacy. *Id.* at 1064–65.

*Rakas* and *Zabalaga* control Zollicoffer's challenge. Zollicoffer was a passenger in the car. He testified that Mitchell picked him up on the street to go for a ride; before that he had no connection with the car. Indeed, Mitchell's mother had purchased the car that very day. Therefore, he could not have any expectation of privacy in it. Zollicoffer nevertheless argues that he had an expectation of privacy in the drugs seized from the car. He would ground this expectation on the government's contention at trial that Zollicoffer and Mitchell jointly and constructively possessed the drugs seized from the car, and on the fact that in his initial questioning by the police, Zollicoffer admitted ownership of the drugs.

This argument is infirm. We have pointed to several factors that can show the existence of an expectation of privacy, including

> whether the defendant has a [property or] possessory interest in the thing seized or the place searched, whether he has the right to exclude others from the place, whether he has exhibited a subjective expectation of privacy that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises.

*United States v. Burnett,* 890 F.2d 1233, 1237 (D.C.Cir.1989) (quoting *United States v. Robinson,* 698 F.2d 448, 454 (D.C.Cir. 1983)). The question is whether Zollicoffer could expect privacy for drugs kept in clear plastic bags or wrapped in napkins and placed in a car owned by the mother of a friend. The drugs contained no markings or wrapping that would reflect his ownership or an intent to exclude others from access, or that would hide the identity of the substance. Based on these uncontestable facts, Zollicoffer cannot plausibly maintain that he possessed an expectation of privacy.

Further, Zollicoffer testified at the suppression hearing that he did not own the drugs and that he had been induced to say that he did. The mere assertion of a possessory interest, which is later contradicted, does not alone establish a legitimate expectation of privacy. In *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), the defendant placed drugs in a companion's purse. The evidence reflected that he had admitted he did not believe the purse would be immune from governmental inspection, but he argued nevertheless that his admission of ownership of the drugs gave him a cognizable expectation of privacy. The Court rejected this claim:

> While petitioner's ownership of the drugs is undoubtedly one fact to be considered in this case, *Rakas* emphatically rejected the notion that "arcane" concepts of property law ought to control the ability to claim the protections of the Fourth Amendment. Had petitioner placed his drugs in plain view, he would still have owned them, but he could not claim any legitimate expectation of privacy.

*Id.* at 105–06, 100 S.Ct. at 2561–62 (citations omitted). We reject Zollicoffer's invocation of this theory as well.

C. Rule 12 Challenge

Mitchell also argues that the trial judge failed to state her essential findings regarding the suppression motion on the record. Under Federal Rule of Criminal Procedure 12(e),

> [a] motion made before trial shall be determined before trial.... Where fac-

tual issues are involved in determining a motion, the court shall state its essential findings on the record.

Mitchell contends that the judge must address all of the factual disputes that arose during the hearing—the brevity of her holding makes meaningful appellate review impossible. Thus, Mitchell urges reversal or remand.

 Mitchell, however, failed to object to the sufficiency of the judge's findings at the suppression hearing; nor did he ask the court to amplify them. We find, therefore, that he waived this objection. *See, e.g., United States v. Caballero,* 936 F.2d 1292, 1296 (D.C.Cir.1991) ("As this court has often repeated, when a trial court omits an essential finding of fact, the failure to object to that omission results in waiver."), *cert. denied,* —— U.S. ——, 112 S.Ct. 943, 117 L.Ed.2d 113 (1992). In the absence of explicit findings, we will uphold the trial judge's findings under Rule 12 "if proper for any reason." *United States v. Allen,* 629 F.2d 51, 57 (D.C.Cir.1980). As it is implicit in her ruling that the judge found the search valid under a *Terry* theory and that she resolved the credibility questions in favor of the officers, we see no need to remand.

### III. CONCLUSION

Because the search of Zollicoffer was permissible under *Terry,* the trial court did not err in allowing the guns seized from Mitchell and Zollicoffer into evidence. As Mitchell waived his right to challenge the warrantless search of the car, we need not determine whether he had a privacy interest in it; and as Zollicoffer lacked a legitimate expectation of privacy in the car or in the drugs placed within it, he cannot maintain a challenge to the validity of the subsequent search of the car. Finally, we see no reason to disturb the trial court's disposition of the motion to suppress. Therefore, the convictions of Wilson Mitchell and Ricky Zollicoffer are

*Affirmed.*