993 F.2d 913
 301 U.S.App.D.C. 251
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Norman M. HARDY, Appellant.
UNITED STATES of America
v.
Patrick EPPES, Jr., Appellant.
 Nos. 92-3014, 92-3049.
 United States Court of Appeals, District of Columbia Circuit.
 April 15, 1993.
 
 Before EDWARDS, SENTELLE, and HENDERSON, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on the record and on the briefs and oral argument of counsel. The Court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.R. 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that appellants' convictions are affirmed and the request for the suppression of material evidence denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing. See D.C.Cir.R. 15(b)(2).
 
 MEMORANDUM
 
 4
 Norman M. Hardy and Patrick C. Eppes, Jr. appeal their convictions on three counts of possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d) and 5871. Hardy also appeals his conviction for unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Both appellants argue that the District Court erred in denying their motion to suppress evidence on the grounds that the traffic stop which led to the discovery of the incriminating evidence was a sham. In addition, appellant Eppes asserts that the court below erred in denying him a two-level downward adjustment in offense level, pursuant to U.S.S.G. § 3B1.2(b) as a minor participant in the offenses prosecuted. We hold that the stop of appellants' car was justified based on the officers' reasonable belief that its dysfunctional taillight was a violation of District of Columbia traffic regulations, and that the record amply supports the District Court's conclusion that Eppes' act of sawing off shotguns and his other acts of cooperation made him as culpable as the other participants in the scheme to sell such weapons. We therefore affirm the decisions of the District Court.
 
 I.
 
 5
 At approximately 2:42 a.m. on August 27, 1991, two D.C. Metropolitan Police officers noticed a crack running across the window of a 1988 Volkswagen Jetta as it drove away from a traffic light at which it had been stopped alongside the police cruiser. The officers also observed a non-working taillight on the car. Believing the broken taillight and cracked windshield to be traffic safety violations, the officers stopped the car.
 
 
 6
 While one officer requested identification from the car's driver, the other shined his flashlight into the vehicle for his own protection. He observed one man holding a black tote bag in his lap, and saw appellant Hardy in the front passenger seat holding a tan tote bag between his legs. Looking in the back seat area, he also noticed what appeared to be the stock of a shotgun or rifle protruding from underneath the driver's seat into the rear of the vehicle. Near the center console, he could see a shotgun shell.
 
 
 7
 At that point, the officer talking to the Jetta's driver had noticed a gun underneath the right front passenger seat. He drew his service revolver and held it on the driver. The officers called additional police units. When they arrived, the officers ordered all occupants out of the vehicle, and found three sawed-off shotguns plus ammunition in the car. After the suspects had been secured, Officer Fitzgerald wrote a ticket for the cracked windshield.
 
 
 8
 Appellants were charged with possessing unlawfully three sawed-off shotguns found in the automobile in which they were riding on the night of their arrest. In support of their motion to suppress evidence, they alleged Fourth Amendment violations, asserting generally that the automobile stop was pretextual, that the weapons were not in plain view and that the police had neither probable cause nor articulable suspicion to arrest or detain them. After an evidentiary hearing on the motion was held on September 12 and 13, 1991, the motion was denied on November 13, 1991. A bench trial began the same day. Only appellants Hardy and Eppes stood trial because one co-defendant had previously pled guilty pursuant to an agreement with the government, and charges against the other were dismissed on the government's motion before trial.
 
 
 9
 Appellants argued only that the officers' reasons for making the initial stop were a sham and that therefore the evidence revealed as a result of the stop should be suppressed. They cited alleged inconsistencies in the officers' testimony, particularly about the location of the crack in the windshield. In addition, they argued that because the crack allegedly did not obstruct the driver's vision and because only one taillight was defective, there were no violations of traffic regulations.
 
 
 10
 Hardy and Eppes were found guilty of all charges on November 14, 1991. Hardy was sentenced to 33 months imprisonment on each of the four counts of conviction, with the terms to run concurrently; Eppes received a 31 month sentence on each of the three counts for which he was convicted, with the terms to run concurrently.
 
 
 11
 Hardy and Eppes have appealed.
 
 II.
 
 12
 We reject appellants' argument that the District Court erred in not finding that the traffic stop was a sham, and that the seizure of the guns found as a result of that stop was therefore unlawful. The police observed two potential violations of the motor vehicle safety regulations, and both officers repeatedly testified that they based their stop of the Jetta on the belief that the broken taillight and the cracked windshield were traffic safety violations.
 
 
 13
 District of Columbia traffic regulations require that each motor vehicle manufactured after September 15, 1955, "shall be equipped with at least two (2) tail lamps mounted on the rear...." 18 D.C.M.R. § 705.2. Therefore, the officers' belief that the Jetta's burned-out taillight constituted a violation of vehicle safety regulations gave them an objectively reasonable basis for conducting a short traffic stop. See United States v. Mitchell, 951 F.2d 1291, 1295 (D.C.Cir.1991), cert. denied sub nom. Zollicoffer v. United States, 112 S.Ct. 1976 (1992); United States v. Montgomery, 561 F.2d 875, 879-80 (D.C.Cir.1977).
 
 
 14
 Appellants' contention that the police stopped the car because they saw five young black men inside fails to undermine the validity of the stop. Nothing in the record suggests that such improper considerations motivated the officers to make the stop. Furthermore, even had the officers harbored illegitimate motives for the stop, that fact would not negate the other, valid grounds. See United States v. Mitchell, 951 F.2d at 1295 (" 'otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity' ") (quoting United States v. Cummins, 920 F.2d 498, 501 (8th Cir.1990), cert. denied, 112 S.Ct. 428 (1991)). The stop was based legitimately on the presence of at least one traffic violation, and therefore did not violate the Fourth Amendment.
 
 
 15
 Once the Jetta was stopped for a lawful purpose, the officers were entitled to seize the shotguns that lay in "plain view" on the floor of the car. See Horton v. California, 496 U.S. 128, 136-37 (1990); Chambers v. Maroney, 399 U.S. 42 (1970). Thus, the District Court properly denied appellants' motion to suppress.
 
 III.
 
 16
 Appellant Eppes also appeals the District Court's denial of his request for a downward adjustment in his offense level as a minor participant. Because the District Court's determination that Eppes had not established that he played a substantially less culpable role than his fellow participants was not clearly erroneous, we reject his claim.
 
 
 17
 A downward adjustment under Section 3B1.2 of the United States Sentencing Guidelines was intended "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2 comment. Here, however, Eppes does not dispute that he sawed off one of the shotguns and carried and handled the weapons as the group was driving toward Washington in search of a buyer. And there is evidence that he was present when the purchase of the shotguns was completed. Indeed, Eppes' act in sawing off the shotgun was an essential part of the charged offense because it is a violation of 26 U.S.C. § 5861 to possess an unregistered shotgun only of it is less than 26 inches long or if its barrel is less than 18 inches long. By sawing off the shotguns, Eppes not only transformed lawful shotguns into unlawful weapons, he also promoted the ultimate sale of the guns by making them more marketable on the street.
 
 
 18
 It is clear that "[w]hen a crime is committed by two or more persons, one will almost always have a different level of participation." United States v. Arredondo-Santos, 911 F.2d 424, 426 (10th Cir.1990). Appellant must prove something more than that he played a lesser role than others before he is entitled to a downward adjustment, because "participation by more than one individual in a course of criminal misconduct does not necessarily mean that one will be considered more or less culpable than another" for the purposes of a mitigating adjustment. United States v. Daughtrey, 874 F.2d 213, 216 (4th Cir.1989) (citing U.S.S.G. Ch. 3, Pt. B, into. comment). Here, appellant did not make such a showing. We therefore affirm the District Court's denial of a two-level downward adjustment in offense level.
 
 IV.
 
 19
 Because the officers' stop of appellants' car was based on the officers' reasonable belief that its broken taillight was a violation of District of Columbia traffic regulations, we uphold the District Court's denial of appellants' motion to suppress the sawed-off shotguns found in the car. Likewise, because appellant Eppes failed to demonstrate that he was entitled to a mitigating role-in-the-offense adjustment, we hold that the District Court properly rejected his request for an additional two-level downward adjustment as a minor participant.