UNITED STATES of America, Plaintiff,

v.

Hugh L. BLACK, Defendant.

Crim. Action No. 95–0259 (JR).

United States District Court,
District of Columbia.

Jan. 17, 1996.

Catherine C. Pisaturo, Assistant U.S. Attorney, Washington, DC, for Plaintiff.

Reita Pendry, Federal Public Defender for D.C., Washington, DC, for Defendant.

### MEMORANDUM ORDER

ROBERTSON, District Judge.

Defendant moved before trial to suppress physical evidence found in a vehicle he was driving just before his arrest and testimony

about statements he made just after his arrest. After an evidentiary hearing held on December 19, 1995, and on January 4, 1996, I have denied the motion. This memorandum sets forth the reasons for that denial.

U.S. Park Police Officer Robert McLean was on duty, in uniform, driving a marked cruiser, at 4:50 p.m. on September 27, 1995 when a vehicle driven by defendant crossed his path. Officer McLean noticed that the vehicle had no inspection sticker on the lower passenger side windshield. Officer McLean activated his flashing lights and stopped the vehicle on Jefferson Street, N.W., at the corner of 13th Street. He left his police cruiser and walked to the driver's side of the vehicle. The vehicle was moving backwards toward the police cruiser, and Officer McLean noticed the driver looking both directions on 13th Street as if seeking an opportunity to leave the scene. He ordered the defendant, who was the driver, to stop and give him the car keys. The defendant said, "Wait a minute." Officer McLean then opened the driver's door and grabbed the defendant's left arm. The defendant then gave the keys to the officer, who placed them on top of the car, closed the car door because he thought the defendant was trying to flee, and stepped back to check the license plate. At some point (the testimony does not establish exactly when) Officer McLean asked the defendant for his license and registration; the defendant turned over his license but said he had no registration—that the registration was "messed up." The defendant appeared to Officer McLean to be nervous. Using police radio communications, Officer McLean soon learned that the VIN number on the car did not match the records for the license.

By this time, Officer Paul Richard had arrived in another police cruiser. Richard approached the subject vehicle from the passenger side and observed that the ignition lock appeared to have been tampered with. Officer McLean then asked the defendant to step out of the vehicle. As the defendant complied, he reached for a black jacket that lay on the console between the driver and passenger seats. Officer McLean directed the defendant to leave the jacket, but the defendant reached for it two more times. Officer McLean then grabbed the defendant's arm and "escorted him" out of the vehicle. He patted the defendant down, found nothing, and took him to the back of the police car. He then sat in the driver's seat and felt the black jacket. He felt a hard object and, thinking this might be a weapon, picked up the jacket. A brown paper lunch bag dropped from the jacket onto the seat. Officer McLean picked up the bag. He realized immediately that it did not contain a gun, but he also concluded immediately that the bag contained crack cocaine. He then opened the bag and saw two clear plastic sandwich bags containing a substance he recognized as crack cocaine. At that point, he gave the signal "10–95" to Officer Richard, indicating that the defendant should be handcuffed.

Officer Richard handcuffed the defendant and walked him to the rear of his (Officer Richard's) vehicle. As Officer Richard opened the rear door of the vehicle to put the defendant inside, the defendant stated, "I don't usually deal in drugs," and went on to say that he needed money because he had two children [Statement 1]. This statement, according to Officer Richard, was not made in response to any question, but Officer Richard then asked the defendant the quantity of drugs that were in the car. The defendant responded, "Two 62's" [Statement 2]. Officer Richard asked whether the car was "legit"; the defendant responded in the affirmative [Statement 3]. Later, at the police station, Officer Richard advised the defendant of his Miranda rights. The defendant declined to answer any questions after that point. Defendant did, however, ask to make a telephone call, whereupon Officer Richard produced a telephone, sat with the defendant, dialed the number for him, and then listened while the defendant stated to the person who answered that he was in big trouble, that his brother was with him, and that "we had a lot of drugs with us" [Statement 4].

*Tangible evidence*

■ The government argues at the threshold that the defendant lacks standing to seek suppression of the evidence seized

from inside the automobile. Officer McLean's testimony tended to establish that the license plates on the vehicle belonged to the defendant's girl friend; that the vehicle itself was registered to a "Hubert Black"; and that the car was not on a stolen vehicle list and the tag was not stolen. That record establishes to my satisfaction that the defendant had a legitimate expectation of privacy in the area from which the physical evidence was taken, *U.S. v. Zabalaga*, 834 F.2d 1062, 1065 (D.C.Cir.1987), and thus that he has standing.

The government then advances two arguments in support of the seizure of the crack cocaine: that it was taken during a lawful "Terry frisk" and satisfied the "plain touch" doctrine; and that it was discovered in a search incident to a lawful arrest.

I find Officer McLean's testimony about the traffic stop, the detention of the defendant and the recovery of the crack cocaine, mostly credible. That credible testimony makes out a borderline case of a lawful search and seizure under the principles established by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny. *See e.g., Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

The facts of this case are very close to those of *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). That decision articulates the principle—upon which the government relies here—that the "plain view" doctrine announced in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), "has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search," *id.* at 375, 113 S.Ct. at 2137. On the facts of the case before it, however, the Supreme Court found an *unlawful* search. The Court observed that the officer had determined that a "small, hard object wrapped in plastic" in respondent's pocket was contraband only af-

ter "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket," *id.* at 378, 113 S.Ct. at 2138. The Court's holding was that the officer's continued exploration of respondent's pocket *after concluding that it contained no weapon* was unrelated to " '[t]he sole justification of the search [under *Terry:*] ... the protection of the police officer and others nearby.' " *Id.* at 378, 113 S.Ct. at 2139.

Other courts will have to decide whether the Supreme Court's rationale in *Minnesota v. Dickerson*—that warrantless seizures during a *Terry* frisk of objects recognized by touch is "justified by the same practical considerations that inhere in the plain view context," 508 U.S. at 376, 113 S.Ct. at 2137—is indeed "practical" enough for working application by police officers on the street or by trial judges hearing suppression motions. In this case, the government's effort to apply the rule led inexorably to a microscopic examination of exactly what Officer McLean thought he felt in the closed paper bag, which fingers he used to hold the bag, what his training had been in recognizing crack cocaine wrapped in paper bags (as distinct from cocaine contained in clothing), and whether the instant when he realized that the bag did not contain a gun was the same instant when he realized that it did contain crack cocaine.

The evidence in this record supports a finding, which I hereby make, that Officer McLean had an *intuition* that the paper bag contained crack cocaine as soon as he felt it—an intuition that was reasonably supported, not only by the feel of the bag, but by the defendant's nervousness, his apparent interest in fleeing, his reluctance to turn over the car keys, his three grabs for the jacket before he exited the car, and the profile established by the mismatch between the license plate and the vehicle and the apparently damaged ignition lock. Still, there is a difference—yet to be explored in the case law—between "recognition" of an object by feel and an intuitive judgment about what the object probably is. The description given by Officer McLean of what he actually felt inside the bag could as well have applied to peanut brittle.

A considerably clearer result emerges under an analysis of searches incident to lawful arrest. Officer McLean considered that the defendant was formally "placed under arrest" only when he gave the "10–95" signal to Officer Richard, *after* he opened the brown paper bag and saw what he recognized as crack cocaine. Still, Officer McLean's undisputed testimony was that he was going to arrest the defendant as soon as he determined that the defendant was driving an unregistered vehicle and because of the "totality of the circumstances," regardless of the results of the search he ended up making.

■ Less credible than the rest of his testimony are Officer McLean's statement about what he would have done (given on redirect), and his rather self-serving resort to the "totality of the circumstances" label to describe his own thinking. The question of whether defendant's arrest was lawful is to be answered not by what Officer McLean said he was thinking, but rather by an objective analysis of the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

■ Officer McLean imposed steadily escalating degrees of physical restraint upon defendant, responding at each step to the information he had: he ordered the defendant to stop when he did not see an inspection sticker; he ordered the defendant to remove the keys when he saw the vehicle moving and thought the defendant was looking for an escape route; he grabbed the defendant by the arm when he received an equivocal response to his order to remove the keys, and then he placed the keys on top of the car and closed the car door to secure the defendant. He then asked the defendant to "step out" of the car, patted him down, and "escorted" him to the rear of the vehicle (where Officer Richard held him by the back of the pants), after learning that the VIN and the license plate did not match, after Officer Richard noted the damaged ignition lock, and after the defendant nervously said that his registration was "messed up." I find that those facts and circumstances established probable cause for the defendant's arrest and that probable cause existed before Officer McLean entered the vehicle and found the crack cocaine. Thus, the search of the car was incident to a lawful arrest. *Bailey v. United States,* 389 F.2d 305, 308 (D.C.Cir. 1967) ("Though the arresting officers did not think that a formal arrest took place until after the stolen wallet was spotted, seized, and examined, ... [and though] the formal arrest was not made until after the search, the search will be upheld so long as there is probable cause for an arrest before the search is begun."); *Rawlings v. Kentucky,* 448 U.S. 98, 111 & n. 6, 100 S.Ct. 2556, 2564–65 & n. 6, 65 L.Ed.2d 633 (1980) (the sequence of the search and the formal arrest makes no difference when probable cause is established before the formal arrest because the police do not need the fruits of the search to establish probable cause, *citing Bailey v. United States).* These principles apply also when the search is conducted of a container within a car. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

*Statements by defendant*

Officer Richard's testimony about the defendant's statements is unrebutted in the record, and I find it to be credible.

■ All of the statements were made when the defendant was in custody. Notwithstanding the absence of a *Miranda* warning, Statement 1 was spontaneous and will be received in evidence. Statements 2 and 3 will be excluded because they were made in response to custodial interrogation. Statement 4 will be received; it was made after defendant had received his *Miranda* warning and had declined to answer further questions, but it was not made directly to Officer Richard or in response to interrogation, and defendant had no reasonable expectation of privacy with respect to his telephone call.