**UNITED STATES of America, Appellee**

v.

**Michael A. WHREN, Appellant.**

**Nos. 94–3012, 94–3017.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 13, 1995.

Decided May 12, 1995.

Rehearing and Suggestion for Rehearing In Banc Denied July 13, 1995.

Lisa D. Burget, Asst. Federal Public Defender, argued the cause for appellant Michael A. Whren. With her on the briefs was A.J. Kramer, Federal Public Defender.

G. Allen Dale argued the cause and filed the brief for appellant James L. Brown.

Margaret M. Lawton, Asst. U.S. Atty., argued the cause for appellee. With her on the

brief were Eric H. Holder, Jr., U.S. Atty., John R. Fisher, Frederick W. Yette and Thomas C. Black, Asst. U.S. Attys.

Before BUCKLEY, WILLIAMS and SENTELLE, Circuit Judges.

SENTELLE, Circuit Judge:

Appellants Michael Whren and James Lester Brown challenge their convictions for federal drug offenses, asserting, among other things, that the District Court erred in denying their motions to suppress physical evidence. Appellants contend that police officers obtained evidence as a result of an illegal search and seizure in violation of appellants' Fourth Amendment rights. Appellants also challenge their convictions and sentences for possession with intent to distribute cocaine base under 21 U.S.C. § 841 (1988), arguing that section 841 is a lesser-included offense of their separate convictions for possession with intent to distribute cocaine base within 1000 feet of a school under 21 U.S.C. § 860(a) (1988). While we reject appellants' Fourth Amendment challenges and otherwise affirm appellants' convictions, we remand for resentencing pursuant to the parties' agreement that section 841 is a lesser-included offense of a section 860(a) offense.

## I. BACKGROUND

On July 8, 1993, a federal grand jury returned a four-count indictment against appellants Michael Whren and James Lester Brown, charging appellants with (1) possession with intent to distribute 50 grams or more of cocaine base, or crack, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii) (Count One); (2) possession with intent to distribute cocaine base within 1000 feet of a school in violation of 21 U.S.C. § 860(a) (Count Two); (3) possession of a controlled substance (marijuana) in violation of 21 U.S.C. § 844(a) (Count Three); and (4) possession of a controlled substance (phencyclidine ("PCP")) in violation of 21 U.S.C. § 844(a) (Count Four). Following a pre-trial suppression hearing to consider appellants' claim that evidence was seized as a result of a police stop and seizure which violated appellants' Fourth Amendment rights, the District Court denied appellants' motions to suppress physical evidence. After a subsequent jury trial, the jury found appellants guilty on all four counts.

### A. *The Suppression Hearing*

The District Court heard extensive evidence in considering appellants' Fourth Amendment claim. The government presented as witnesses the arresting officers, who testified about the events surrounding appellants' arrest. On the evening of June 10, 1993, District of Columbia police officers Efrain Soto, Jr., Homer Littlejohn and several other plainclothes vice officers were patrolling for drug activity in the area of Minnesota Avenue and Ely Place, in Southeast Washington, in two unmarked cars. Officers Soto and Littlejohn were in a car driven by another officer, Investigator Tony Howard.

Soto testified that as the officers turned left off of 37th Place onto Ely Place heading north, he noticed a dark colored Nissan Pathfinder with temporary tags at the stop sign on 37th Place. Soto observed the driver, later identified as Brown, looking down into the lap of the passenger, Whren. Soto testified that at least one car was stopped behind the Pathfinder. As the officers proceeded slowly onto 37th Place, Soto continued to watch the Pathfinder, which Soto testified remained stopped at the intersection for more than twenty seconds obstructing traffic behind it. Investigator Howard had already begun to make a U-turn to tail the Pathfinder when Soto instructed him to follow it. As the officers turned to tail the vehicle, appellants turned west onto Ely Place without signalling and, as Soto testified, "sped off quickly." Soto further testified that the Pathfinder proceeded at an "unreasonable speed."

The officers followed the Pathfinder onto Ely Place, until it stopped at the intersection of Ely Place and Minnesota Avenue, surrounded by several cars in front of it, two behind it, and several to its right. The officers pulled into the eastbound lane of traffic parallel to the Pathfinder on the driver's side. Officer Soto then immediately exited his vehicle and approached the driver's side of the Pathfinder, identifying himself as a

police officer. Officer Littlejohn followed a few steps behind and to the right of Soto.

After noticing that appellants could not pull over because of parked cars to their right, Soto told appellant Brown to put the Pathfinder in park. As he was speaking, Soto noticed that appellant Whren was holding a large clear plastic bag of what the officer suspected to be cocaine base in each hand. Soto yelled "C.S.A." to notify the other officers that he had observed a Controlled Substances Act violation. He testified that, as he reached for the driver's side door, he heard Whren yell "pull off, pull off," and observed Whren pull the cover off of a power window control panel in the passenger door and put one of the large bags into the hidden compartment therein. Soto opened the door, dove across Brown and grabbed the other bag from Whren's left hand. Officer Littlejohn pinned Brown to the back of the driver's seat so that he could not move.

Multiple officers then placed appellants under arrest and searched the Pathfinder at the scene. The officers recovered two tinfoils containing marijuana laced with PCP, a bag of chunky white rocks and a large white rock of crack cocaine from the hidden compartment on the passenger side door, numerous unused ziplock bags, a portable phone and personal papers.

Defense attorneys pressed the arresting officers on their reasons for making the stop. Soto stated that the driver of the vehicle was "not paying full time and attention to his driving." Soto testified that he did not intend to issue a ticket to the driver for stopping too long at the stop sign, but he wished to stop the Pathfinder to inquire why it was obstructing traffic and why it sped off without signalling in a school area. He testified that the decision to stop the Pathfinder was not based upon the "racial profile" of the appellants, but rather on the actions of the driver. Officer Littlejohn's testimony differed only slightly from Soto's with respect to the hand from which Soto seized the drugs, but otherwise confirmed Soto's account.

## B. *The District Court's Suppression Ruling*

After hearing the evidence and appellants' argument that the traffic stop was pretextual and thus violated the Fourth Amendment, the District Court denied appellants' motions to suppress the physical evidence. Although the court noted some minor discrepancies between testimony by Littlejohn and Soto, it noted that

> the one thing that was not controverted ... is the facts surrounding the stop. There may be different ways in which one can interpret it but, truly, the facts of the stop were not controverted. There was nothing to really demonstrate that the actions of the officers were contrary to a normal traffic stop. It may not be what some of us believe should be done, or when it should be done, or how it should be done, but the facts stand uncontroverted, and the court is going to accept the testimony of Officer Soto.

The court thus concluded that "the government has demonstrated through the evidence presented that the police conduct was appropriate and, therefore, there is no basis to suppress the evidence."

## C. *The Convictions and the Appeal*

Following the court's pre-trial suppression ruling, trial proceeded, and appellants were convicted on all four counts. On January 26, 1994, appellant Whren was sentenced to 168 months incarceration and five years supervised release on count one, 168 months incarceration and ten years supervised release on count two, one year imprisonment and one year supervised release on each of counts three and four. All terms were to be served concurrently. Whren was also assessed a fine of $8,800 on each count, all fines to be concurrent with count two, and a special assessment of $150. On February 9, 1994, appellant Brown was sentenced to 168 months incarceration and ten years supervised release on count one, 168 months incarceration and five years supervised release on count two, one year imprisonment and one year supervised release on each of counts three and four, all terms to be served concurrently, and a $150 special assessment.

Whren and Brown appeal their convictions and sentences, raising several challenges. Although we have accorded each alleged error full consideration, we believe several do not merit separate discussion. For those challenges to appellants' convictions not discussed specifically herein, we reject appellants' arguments. We thus turn our attention to the two arguments we believe merit separate discussion: (1) that the District Court erred in denying their motions for suppression of physical evidence under the Fourth Amendment; and (2) that count one of appellants' indictment is a lesser-included offense of count two.

## II. DISCUSSION

Appellants contend that the District Court erred in denying their motions to suppress physical evidence seized as a result of the traffic stop on June 10, 1993. They argue that the police officers used the alleged traffic violations as a pretext for what in actuality was a search for drugs without probable cause; thus, the search was objectively unreasonable under the Fourth Amendment. Although appellants recognize that this circuit has faced similar circumstances in *United States v. Mitchell*, 951 F.2d 1291 (D.C.Cir. 1991), *cert. denied*, 504 U.S. 924, 112 S.Ct. 1976, 118 L.Ed.2d 576 (1992), they contend that *Mitchell* did not adopt a standard with sufficient specificity to govern this case. Appellants assert that *Mitchell* merely requires a court to "look to objective circumstances ... rather than an officer's state of mind," in determining the legitimacy of police conduct. *Mitchell*, 951 F.2d at 1295. Here, they contend that the objective circumstances did not justify the stop.

Appellants argue that this court should borrow from the law of other circuits in determining whether "objective circumstances" warrant a search. While several circuits hold that an alleged pretextual stop is valid as long as an officer legally "could have" stopped the car in question because of a suspected traffic violation, *see, e.g., United States v. Scopo*, 19 F.3d 777, 782–84 (2d Cir.), *cert. denied*, — U.S. ——, 115 S.Ct. 207, 130 L.Ed.2d 136 (1994); *United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir.1993), *cert. de-*

*nied*, — U.S. ——, 114 S.Ct. 1374, 128 L.Ed.2d 50 (1994), appellants urge the court to adopt the test laid out by the Tenth and Eleventh Circuits, which have held that a stop is valid only if "under the same circumstances a reasonable officer *would have* made the stop in the absence of the invalid purpose." *United States v. Smith*, 799 F.2d 704, 709 (11th Cir.1986) (emphasis added); *see United States v. Guzman*, 864 F.2d 1512, 1517 (10th Cir.1988). Appellants contend that the "would have" test is superior to the "could have" test because the latter fails to place any reasonable limitations on discretionary police conduct, thus "cut[ting] at the heart of the Fourth Amendment." Brief of Appellant Whren at 22.

Finally, appellants assert that the District Court erred in convicting them for violation of 21 U.S.C. § 841 as well as 21 U.S.C. § 860(a), because the former is a lesser-included offense of the latter.

### A. *The Traffic Stop and Search.*

The Fourth Amendment to the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. CONST. amend. IV. The Amendment imposes "a standard of 'reasonableness' upon the exercise of discretion by government officials." *Delaware v. Prouse*, 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). Because an ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth Amendment, *Prouse*, 440 U.S. at 653, 99 S.Ct. at 1395–96, such action must be justified by probable cause or, at least, reasonable suspicion of unlawful conduct, based upon specific and articulable facts. *See Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). In the context of automobile stops and searches, a court "must look to objective circumstances in determining the legitimacy of police conduct under the Fourth Amendment." *Mitchell*, 951 F.2d at 1295.

In claiming that this court should adopt the "would have" test for determining whether objective circumstances exist to warrant an automobile stop and subsequent search,

appellants argue that pretextual stops are objectively unreasonable because, under the same circumstances, an officer without ulterior purposes would not have stopped the offenders. However, "[e]ven if we agreed that the stop was a mere pretext for a search, that does not mean that a violation of the Fourth Amendment has occurred." *Mitchell,* 951 F.2d at 1295.

*Mitchell* provides strikingly similar facts to this case. In *Mitchell,* a D.C. police officer, Stone, observed the two defendants, Mitchell and Zollicoffer, drive at a "high rate of speed," stop suddenly, and turn sharply without signalling. *Id.* at 1293. Stone gave chase and pulled their car over after brief pursuit. When Stone went to the window of the car, he had not yet decided whether to issue a citation. As he returned to his car to run a check on the driver, an assisting officer noticed Zollicoffer leaning forward in the passenger seat with his hands inside his coat, as if holding a weapon. The officer ordered the defendants out of the car, searched them, and found weapons on each. *Id.* at 1293–94. Mitchell and Zollicoffer moved to suppress tangible evidence recovered during the stop, but the trial court denied their motions to suppress. *Id.* at 1294.

Against appellants' arguments that the stop was an unlawful pretext to search, this court affirmed. *Id.* at 1299. We reasoned that "[t]he Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one." *Id.* at 1295. Officer Stone had observed two of the violations observed by Officer Soto in this case: speeding and turning without a signal. *Id.* Like Officer Soto, Officer Stone had not yet decided whether to issue a citation, but we held that his indecision "does not vitiate the justification for the initial stop." *Id.* In applying the "objective circumstances" test, we noted that "[e]ven a relatively minor offense that would not of itself lead to an arrest can provide a basis for a stop for questioning and inspection of the driver's permit and registration." *Id.* (quoting *United States v. Montgomery,* 561 F.2d 875, 880 (D.C.Cir.1977)). Presented with the fact that the officer had observed the traffic

violations, the court concluded that "objective circumstances clearly justified stopping the car." *Id.*

■ In holding that a traffic stop is reasonable as long as the officer has observed traffic violations by the defendant, *Mitchell* implicitly adopts the standard embraced by the majority of courts which have considered the "pretext" issue. That is, regardless of whether a police officer subjectively believes that the occupants of an automobile may be engaging in some other illegal behavior, a traffic stop is permissible as long as a reasonable officer in the same circumstances *could have* stopped the car for the suspected traffic violation. *See United States v. Scopo,* 19 F.3d at 784 ("[W]here the arresting officer had probable cause to believe that a traffic violation occurred or was occurring in the officer's presence, and was authorized by state or municipal law to effect a custodial arrest for the particular offense, the resulting arrest will not violate the fourth amendment."); *United States v. Hassan El,* 5 F.3d at 730 ("[W]hen an officer observes a traffic offense or other unlawful conduct, he or she is justified in stopping the vehicle under the Fourth Amendment."); *United States v. Ferguson,* 8 F.3d 385, 392 (6th Cir.1993) (in banc) ("[T]raffic stops based on probable cause, even if other motivations existed, are not illegal."), *cert. denied,* —— U.S. ——, 115 S.Ct. 97, 130 L.Ed.2d 47 (1994).

We thus reject appellants' suggestion that we adopt the more open-ended "would have" standard of the Tenth and Eleventh Circuits. *See United States v. Smith,* 799 F.2d at 709 (11th Cir.1986); *see also United States v. Guzman,* 864 F.2d at 1517 (10th Cir.1988). The objective "could have" standard provides a more principled method of determining reasonableness for two primary reasons. First, it eliminates the necessity for the court's inquiring into an officer's subjective state of mind, in keeping with the Supreme Court's admonitions that Fourth Amendment inquiries depend "on an objective assessment of the officers' actions in light of the facts and circumstances confronting him at the time ... and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon,* 472 U.S. 463,

470–71, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985). At the same time, in response to appellants' legitimate concerns regarding police conduct, the "could have" test provides a principled limitation on abuse of power. Officers cannot make a traffic stop unless they have probable cause to believe a traffic violation has occurred or a reasonable suspicion of unlawful conduct based upon articulable facts—requirements which restrain police behavior. *Cf. Delaware v. Prouse*, 440 U.S. at 661, 99 S.Ct. at 1400.

■ Applied to the facts of this case, the objective test adopted in *Mitchell* suggests that Officers Soto and Littlejohn had sufficient grounds to stop appellants. The District Court credited the testimony of Soto, who observed three traffic violations when appellant failed to give "full time and attention" to his driving, *see* Title 18 D.C.M.R. Vehicle and Traffic Regulations § 2213.4, turned without signalling, *see id.* at § 2204.3, and drove away at an unreasonable speed. That factual finding is not clearly erroneous. *See United States v. Taylor*, 997 F.2d 1551, 1553 (D.C.Cir.1993) (district court's findings of fact reviewed for clear error). Having seen those violations, Soto had the articulable and specific facts necessary to establish probable cause to stop appellants. *See Mitchell*, 951 F.2d at 1295; *Hassan El*, 5 F.3d at 729–30; *Scopo*, 19 F.3d at 781. Our inquiry goes no further.

We wish to make one point clear in applying the *Mitchell* standard. The *Mitchell* test ensures that the validity of the traffic stop "is not subject to the vagaries of police departments' policies and procedures." *Ferguson*, 8 F.3d at 392. That is, whether a stop can be made depends on whether the officers had an objective legal basis for it, not on whether the police department assigned the officer in question the duty of making the stop. *See Hassan El*, 5 F.3d at 730 (rejecting defendant's argument that stop was unreasonable because particular arresting officers were plainclothes officers assigned to narcotics duty, not traffic duty). In this instance, it is of no moment that Soto and Littlejohn were vice officers patrolling for drug violations rather than traffic police. When they observed a traffic violation, they,

as officers of the law, were constitutionally justified in stopping appellants.

Accordingly, we reject appellants' Fourth Amendment arguments. Because appellants challenge only the stop and not the subsequent search of the Pathfinder, we need inquire no further. We conclude that the District Court properly denied appellants' motions to suppress.

### B. *The Lesser–Included Offense.*

Appellants contend that their convictions for violation of 21 U.S.C. § 841(a)(1), which proscribes possession with intent to distribute controlled substances, including cocaine base, should be vacated because that section describes a lesser-included offense of 21 U.S.C. § 860(a), which proscribes possession with intent to distribute a controlled substance within one thousand feet of a school. Appellants rely on *United States v. Williams*, 782 F.Supp. 7, 8–9 (D.D.C.1992), *aff'd without opinion*, 6 F.3d 829 (D.C.Cir. 1993), in which the District Court concluded that section 841 offenses were, in fact, lesser included offenses of section 860(a) offenses. The government agrees with appellants' argument. Consequently, pursuant to the agreement of the parties, we will remand to the District Court for entry of an amended judgment and resentencing on Counts One and Two.

### III. CONCLUSION

*United States v. Mitchell* dictates that police conduct in this case was reasonable. When a police officer observes a traffic violation, his subsequent stop of the vehicle is reasonable because it is supported by probable cause. We thus reject appellants' Fourth Amendment arguments, as well as all claims not discussed specifically herein. We remand, however, for entry of an amendment judgment and resentencing only with respect to Part II.B. above.