**UNITED STATES of America**

v.

**Michael DAVIS, Defendant.**

**C.A. No. 95–202–LFO.**

United States District Court,
District of Columbia.

Nov. 17, 1995.

Steven Mellin, Asst. U.S. Attorney, Washington, D.C., for the U.S.

Mark Rochon, Kohlman, Roichon & Roberts, Washington, D.C., for Defendant.

*MEMORANDUM AND ORDER*

OBERDORFER, District Judge.

Defendant has filed a motion to suppress all evidence recovered by Officer Sepeck of the United States Park Police from a stop and search of defendant's car on the evening of July 19, 1995, at Hains Point Park. For the reasons stated below, defendant's motion is denied.

I.

Officer Sepeck testified that on the evening of July 19, 1995, he and Officer Ruocco were conducting traffic enforcement at the exit of Hains Point Park. "We happened to be there," Officer Sepeck said. Neither Officer Sepeck nor Officer Ruocco had a traffic ticket book with him; nor is it the regular practice of Officer Sepeck to carry a traffic ticket book. *See* Officer Sepeck's Motion Testimony of November 8, 1995, Transcript (tr.) at 23. According to him, stop sign violations are a problem at Hains Point Park, even at night, because of bicyclists and joggers using the roads at night. Officer Sepeck testified that drugs were also a problem at Hains Point Park. He tries to search a car whenever he can; his goal is to search "in every car I stop." Tr. at 24.

Around 8:40 p.m., on July 19, 1995, defendant and his god brother, Aristede Lamont Rivers, were leaving Hains Point Park in separate cars. Rivers' car was ahead of defendant's car. As Rivers and defendant completed a right turn at an intersection, Officer Sepeck motioned each of them in time to pull over and stop.

Officer Sepeck testified that he pulled Rivers' car over because Rivers ran the stop sign at the intersection. Tr. at 23. Rivers testified that he saw the stop sign and stopped. Rivers was not issued a ticket for the alleged stop sign violation.

More to the point, Officer Sepeck testified that when defendant's car thereafter turned right at the stop sign and was about 50 feet away, Officer Sepeck observed a crack in defendant's windshield and motioned him to pull over and stop. Driving with a defective windshield is a traffic violation. Officer Sepeck testified that at the time of the stop, "It was dark, but there's streetlights on the corner." Tr. at 6. Defendant, Officer Ruocco, and Rivers all confirmed that it was dark. Rivers added, in his testimony, that there were trees near the stop sign at the intersection. Officer Sepeck stated that he could "see [the crack] easily because the light reflects off the windshield at different angles and that's how you can see the cracks." Tr. at 23. Officer Sepeck also testified that just before he motioned defendant's car over, he observed defendant making several motions inside the car. "His hands kind of came close to his waist. His shoulders then raised a little, and then he dipped his right shoulder below the dashboard, keeping his head above the dashboard. Then he came back up." Tr. at 5–6. After the stop, despite repeated warnings by Officer Sepeck, defendant continued to move as if to reach under the driver's seat and around the console. After several (more than two) such warnings went unheeded, Officer Sepeck spoke more firmly to defendant, whereupon the car jerked forward at least three feet, as if defendant had taken his foot off the clutch. Thereupon, Officer Sepeck ordered defendant out of the car. While Officer Ruocco detained defendant at the rear of his car, Officer Sepeck reached through the opened door and under the driver's seat where defendant apparently had been reaching. There, Officer Sepeck recovered a blue bag, felt lumps in it suggestive of crack cocaine (later determined to weigh more than 50 grams), and directed Officer Ruocco to place defendant under arrest.

At the station, defendant was presented with a traffic ticket for the defective windshield and said that he knew his windshield was cracked and that he meant to go to the junkyard and get a new one.

II.

■ The legal issue presented by defendant's motion is whether Officer Sepeck had probable cause to stop defendant's car. This Circuit has held that the "Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one." *United States v.*

*Mitchell,* 951 F.2d 1291, 1295 (D.C.Cir.1991). It is the law of this Circuit that, even if the stop is a pretext for a search, "that does not mean that a violation of the Fourth Amendment occurred. It is well settled that a court must look to objective circumstances in determining the legitimacy of police conduct under the Fourth Amendment, rather than an officer's state of mind." *Id.*

More recently, this Circuit defined with greater elaboration how the "objective circumstances" standard is to be applied. *United States v. Whren,* 53 F.3d 371 (D.C.Cir.1995). According to the police in that case, defendant's car was stopped after he turned without signaling and because he was traveling at an "unreasonable" speed. *Id.* at 372. The *Whren* defendant argued that even under the "objective circumstances" standard, the stop was invalid because, quoting the rule of the 10th and 11th Circuits, "a stop is valid only if 'under the same circumstances a reasonable officer *would have* made the stop in the absence of the invalid purpose.'" *Id.* at 374. Defendant contended that no reasonable officer *would have* stopped the defendant for turning without signaling and for driving at an "unreasonable" speed. Our Court of Appeals disagreed with the *Whren* defendant and with its sister circuits. It held that "a traffic stop is permissible as long as a reasonable officer in the same circumstances *could have* stopped the car for the suspected traffic violation." *Whren,* 53 F.3d at 375. Thus, since driving with a cracked windshield is a traffic violation, a reasonable officer "could have" stopped defendant's car if he "could have" seen the crack in the windshield before he stopped the car. Accordingly, even if Officer Sepeck used the broken windshield as a pretext for a drug search, the stop here would not violate the Fourth Amendment as it is construed in this Circuit if a reasonable officer could have seen the crack in the windshield before he stopped defendant's car. I find that he could, and that Officer Sepeck did, see the crack in the windshield before he stopped defendant's car.

In corroboration of Officer Sepeck's testimony, the government offered his contemporaneous diagram of an extensive crack in the windshield. In addition, both defendant's mother and defendant himself confirmed that the windshield had a substantial crack in it before the stop. A question remained whether a reasonable officer could have observed the crack from a distance of 50 feet as the car approached him at dusk. To resolve this factual question, defense counsel arranged for a viewing of the car by the Court at dusk on November 10 with both counsel present, defendant having waived his presence. The viewing confirmed that street light reflected on, and highlighted, the crack so that it was observable to my unpracticed eye from 30 feet away. In the circumstances here, whether the officer was 50 feet away or 30 feet away is not a material issue. In any event, I infer and find that a trained and experienced police officer could have observed the car as quickly, or more quickly, and at a greater distance, as Officer Sepeck testified that he did.

Accordingly, I find that Officer Sepeck observed the crack in the windshield and thereafter lawfully stopped defendant's car. The ensuing search followed logically and legally from the stop, the defendant's inability to produce a license and registration, his suspicious movements, and the jerk of the car.

### III.

Defendant also moves to suppress his statements that "he knew his windshield was cracked and that he meant to go to the junkyard and get a new one." Defendant's Motion at 4. Defendant argues that his statements are the "direct fruits" of the Fourth Amendment violation that occurred when he was stopped by Officer Sepeck, and so under the "fruit of the poisonous tree" doctrine, his statements should be excluded. *See Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 416–17, 9 L.Ed.2d 441 (1963). Because I conclude above that there was no Fourth Amendment violation when defendant was stopped by Officer Sepeck, there is, logically, no subsequent Fourth Amendment violation here under *Wong Sun.*

Defendant also argues that his statements were taken in violation of his *Miranda*

rights. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* holds that once a defendant in custody asks to speak with a lawyer, all interrogation must cease until a lawyer is present. The Supreme Court has defined "interrogation" as "words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis,* 446 U.S. 291, 302, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980). The defendant was in "custody" at the time the statements were made. The question here is whether defendant was "interrogated" when he was presented with a traffic ticket for the defective windshield violation. Plainly, he was not. Defendant made his statements spontaneously, as no questions were asked of him; and it cannot be said under these circumstances that an officer's presenting a traffic ticket to the defendant is an action "reasonably likely to elicit an incriminating response."

### IV.

Defendant's motion to suppress the evidence is denied.

So ordered.