**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**AKEEM MATTHEW, PHILLIP GORDON, ACCELYN MORTON, and ALEXANDER GORDON, Defendants**

Nos. SX-09-CR-723, SX-09-CR-724, SX-09-CR-725, SX-09-CR-726

Superior Court of the Virgin Islands

Division of St. Croix

October 4, 2011

380

KIPPY G. ROBERSON, Assistant Attorney General, Department of Justice, St. Croix, Virgin Islands, *Attorney for Plaintiff.*

ERNEST E. MORRIS, JR. ESQ., Territorial Public Defender, Kingshill, St. Croix, *Attorney for Defendant Akeem Matthews.*

ANNA WASHBURN, ESQ., Law Offices of Rohn & Carpenter, LLC, Christiansted, St. Croix, *Attorney for Defendant Alexander Gordon.*

JOMO MEADE, ESQ., Frederkisted, St. Croix, USVI, *Attorney for Defendant Accelyn Morton.*

ESZART A. WYNTER, SR., ESQ., Law Offices of Eszart A. Wynter. Sr. Esq., Frederiksted, St. Croix, *Attorney for Defendant Phillip Gordon.*

WILLOCKS, *Judge*

## AMENDED MEMORANDUM OPINION

(October 4, 2011)

**THIS MATTER** came before the Court on the Defendant Accelyn Morton's (hereafter "Morton") Motion to Suppress filed pursuant to Rule 12(b)(3), (c) of the Federal Rules of Criminal Procedure on grounds that evidence was illegally obtained in violation of their Fourth and Fifth Amendment Rights. Defendants Alexander Gordon (hereafter "A. Gordon"), Phillip Gordon (hereafter "P. Gordon"), and Akeem Matthews (hereafter "Matthews") also joined on the motion. For reasons elucidated below, the Court will grant Defendants' Motion to Suppress.

383

## FACTUAL AND PROCEDURAL BACKGROUND

On or about December 27, 2009, at approximately 1:41 a.m. in the vicinity of the Concordia area in Frederiksted, St. Croix. Officers Ralston Wright (hereinafter "Officer Wright") and Officer Moses Francis (hereinafter Officer Francis) were on mobile patrol in a marked vehicle. According to Officer Wright, while they were on patrol, he saw a white or beige Toyota Forerunner bearing license plate number CCW-681 travelling in the opposite direction on the Concordia Road at about forty to forty-five miles an hour in an area where the speed limit is 30 miles an hour. Wright testified that they (police officers) turned their vehicle around and followed the Forerunner. When the Forerunner reached the intersection of Queen Mary Highway and Concordia Road, the Forerunner reduced its speed to about 3 to 5 miles an hour. However, according to the testimony of Officer Wright the Vehicle did not come to a complete stop.

According to Officer Wright, once they (the police officers) observed that the vehicle did not come to a complete stop, the police turned on their emergency lights and conducted a traffic stop of the Forerunner. There were five occupants in the Forerunner: the five defendants and a juvenile.[1] The driver of the Forerunner, Accelyn Morton (hereinafter "Morton") was asked to produce his driver's license, car registration and insurance.[2]

Officer Wright stated that while effectuating the traffic stop, there were a series of observations that raised his concern for his safety as well as that of his fellow officer. These concerns were: 1) the traffic stop occurred around 1:41 a.m. 2) the vehicle was observed travelling at about 10 to 15 miles over the speed limit and failed to stop at a stop sign 3) the driver could not produce documents for the vehicle 4) the police officers were outnumbered five to two and 5) Officer Wright thought he saw the juvenile opening the rear passenger door of the Forerunner.

At the suppression hearing, Officer Wright gave two different versions as to when he ordered the occupants to exist the vehicle. Under direct

---

[1] There is no testimony solicited at the hearing that any of the police officers knew that one of the occupants was a juvenile at the time of the traffic stop and the arrest.

[2] It is unclear as to whether Accelyn Morton produced his drivers license but was unable to produce the documents for the vehicle. To wit: vehicle registration and license. However, none of the Defendants have been charged with operating a motor vehicle without registration or insurance.

examination, Officer Wright stated once he observed a passenger of the vehicle door attempting to be open, he ordered all of the occupants to exist the vehicle. Once the passengers [defendants] exited, Officer Wright used his flashlight to illuminate the interior of the car. Officer Wright claims that while doing so he observed in *plain view a chrome handle handgun on the rear passenger floor board of the car*.

On cross-examination, Officer Wright stated that while the defendants were all still sitting down in the vehicle Officer Wright illuminated the interior of the vehicle with the flashlight for his safety and that it was only once he observed the chrome handle handgun in plain view that he yelled to his partner Officer Francis. "Gun!" and immediately ordered the passengers [defendants] in the vehicle, "Everyone exit the vehicle."

Nevertheless, once the occupants had exited the Forerunner, according to Officer Wright they were placed under arrest. After the passengers (Defendants) were patted down, according to Officer Wright, the pat down revealed another gun on the person of the juvenile. While the officers were still putting handcuffs on the occupants of the vehicle [defendants] Officer Wright observed a third weapon inside an open compartment in the lower bottom of the rear back door of the car, which had been left open when the occupants of the car exited.[3]

Officer Wright testified that the passengers [defendants] were all arrested after the first gun was found. Defendants were thereafter taken to the Wilbur Francis Command Station (hereafter the "Station") where they were advised of their rights. The Defendants were then questioned as to whether or not they had a license to posses a firearm. Upon running a routine record check with the Virgin Islands Police Department Firearms Bureau, the Officers were able to confirm that *none* of the occupants of the vehicle [defendants] possessed a [firearm's] license in the Virgin Islands.

Morton, the driver, and the other passengers (Defendants) were subsequently charged with, inter alia, unauthorized possession of firearm

---

[3] The first weapon that was found in plain view on the floor board of the vehicle was a hand gun revolver, Smith and Wesson, .38 serial number BFK 6608, with five (5) .38 cartridges; the second weapon that was found on juvenile was a revolver Taurus black in color .38 special serial number KC89440 with five (5) .38 cartridges; and the third weapon that was found on the right side door compartment was a Taurus Millennium, 9mm, serial number TUL 26636, with one magazine loaded with ten (10) 9mm cartridges and one (1) 9mm cartridge taken from the chamber.

385

and the failure to report ammunition obtained or bought outside the Virgin Islands.

Defendants filed a motion to suppress the weapons and ammunition seized by the Officers as fruits of a warrantless search and seizure in violation of the Fourth and Fifth Amendments of the Constitution. Additionally, Defendants move to suppress the introduction of any statement allegedly made to agents of the Government prior to or subsequent to the date recounted above, and all other evidence which is derivative of the search and seizure of his person and property conducted by agents of the Government. In support thereof, Defendants argue that under Virgin Islands law a traffic stop made on the basis of speeding does not authorize the officer to arrest the driver and passengers or search the car. Moreover, Defendants argue that discovery of a firearm in a car, without more, does not constitute sufficient legal grounds to arrest the driver and passengers of the car. In opposition, the People contend that the weapons and ammunition seized were the fruits of lawful police activity that was reasonable under the totality of the circumstances and are, therefore, not subject to suppression. Defendants filed a supplemental response in support of their motion.

## DISCUSSION

The Court need not resolve the matter of whether the gun was in plain view or not, for once the constitutionality of the traffic stop has been resolved, the crux of the matter is whether the arrest was a lawful one or not. Thus, assuming *arguendo*, the gun was found to be in plain view and the other facts that Officer Wright alleges are true, the central issue still exists as to the legality of the arrest. Hence, there is no need for this Court to present a *magnum opus* on search and seizure.

■ The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The right of security in person and properly afforded by the Fourth Amendment may be invaded in various different ways by searches and seizures; however, "[i]t must always be remembered that what the Constitution forbids is not all searches and seizures, but *unreasonable* searches and seizures."

*Elkins v. United States*, 364 U.S. 206, 222, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960).

█ As a general rule, the burden of proof is on the defendant who seeks to suppress evidence. *See United States v. Acosta*, 965 F.2d 1248, 1256 n.9 (3d Cir. 1992) (citations omitted). However, once the defendant has established a basis for his motion, *i.e.*, the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable. *See United States v. McKneely*, 6 F.3d 1447, 1453 (10th Cir. 1993). The government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).

Here, Defendants argue that Officer Wright did not have 1) probable cause to search the car, nor 2) reasonable suspicion that Morton or the other passengers had engaged in criminal activity to invoke the narrowly drawn exception to the probable cause requirement of the Fourth Amendment. More specifically, the defense argues that the officers lacked probable cause to arrest the defendants [passengers]. He argues this on the premise that 1) under Virgin Islands law a traffic stop made on the basis of the speeding does not authorize the officer to arrest the driver and passengers or search the car, and relying on the Third Circuit's holding in *United States v. Ubiles*, 224 F.3d 213 (3d. Cir. 2000) that 2) the discovery of the firearm in a car, without more, does not constitute sufficient legal grounds to arrest the driver and passengers of the car.

In opposition, the People contend that the police officer [Officer Rolston Wright] who made the stop of the defendants made the stop due to the vehicle speeding and running through a stop sign without stopping. Upon effecting a lawful traffic stop under *Terry*, the police then saw a hand gun on the rear floorboard of the vehicle from the outside of the vehicle, in *"plain view"*. According to the People, it was the discovery of the concealed handgun in proximate control of the passengers that then provided *reasonable suspicion* that defendants were armed and dangerous and thereby reasonably suspected to be involved in criminal activity justifying further investigatory inquiry and search of the parties for officer safety consistent with the *Terry* standard. The People further argues that under the "totality of the circumstances" based upon Officer Ralston's observation of the gun in plain view on the floorboard from the outside of the vehicle and officer safety, provided probable cause for a search of the

automobile and the defendants based upon the officer's objective belief under the totality of the circumstances that criminal conduct was afoot and for the officers' safety.

■ "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537, 105 S. Ct. 3304, 87 L. Ed. 2d 381 (1985). The "general rule" is that "warrantless searches are presumptively unreasonable . . . ." *Horton v. California*, 496 U.S. 128, 133, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990). The courts have, however, fashioned exceptions to the general rule, recognizing that in certain limited situations the government's interest in conducting a search without a warrant outweighs the individual's privacy interest. *See, e.g., id.*; *Montoya de Hernandez*, 473 U.S. at 537-41, 105 S. Ct. 3304. A *Terry* "stop and frisk" is one such exception. *See Terry v. Ohio*, 392 U.S. 1, 20-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

■ *Terry*, and cases which follow it, make clear that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675, 145 L. Ed. 2d 570 (2000). *Terry* approved as well "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry*, 392 U.S. at 27.

### Constitutionality of the Police Traffic Stop

The keystone issue to determine in this case is the constitutionality of the police traffic stop. The constitutionality of the police traffic stop will depend upon whether, *at the time of the stop*, the Officers reasonably believed that Defendant A. Gordon [the motorist] was committing a traffic offense, and whether the law authorized a stop for such an offense. *See U.S. v. Johnson*, 63 F.3d 242, 246 (3d Cir. 1995).

■ Officer Wright testified that he believed based upon his field observations that, on May 20, 2010 at around 1:41 a.m., A. Gordon was driving at approximately 10 to 15 mph in excess of the 30 mph speed limit for some distance and that although — he slowed the vehicle down at the intersection of Queen Mary and Concordia to about a speed of 3 to 5 mph

— he failed to make a full stop at the stop sign. Officer Wright further testified that it was based upon the observed traffic violations that he proceeded to stop the car. Although the defendants attempt to suggest that the Officers' testimony may not be reliable on these facts, in so arguing they have failed to present any evidence that sufficiently controverts Officer Wright's reasonable basis to believe that the defendants had violated traffic regulations prior to effecting the traffic stop. Virgin Islands traffic laws proscribe the speeding of motor vehicles and impose a clear obligation on a motorist to bring his motor vehicle to a full stop at a stop sign. *See* 20 V.I.C. §§ 494 and 495. Moreover, police officers are not only imbued with the legal authority, but it is also clearly their legal duty, to effect traffic stops to investigate and enforce motorists' compliance with these types of traffic regulations. *See* 20 V.I.C. § 491.[4]

"On the one hand, it is frequently argued that in dealing with the rapidly unfolding and often dangerous situations on city streets the police are in need of an escalating set of flexible responses, graduated in relation to the amount of information they possess. For this purpose it is urged that distinctions should be made between a 'stop' and an 'arrest' (or a 'seizure' of a person), and between a 'frisk' and a 'search.' Thus, it is argued, the police should be allowed to 'stop' a person and detain him briefly for questioning upon suspicion that he may be connected with criminal activity. *Upon suspicion that the person may be armed, the police should have the power to 'frisk' him for weapons. If the 'stop' and the 'frisk' give rise to probable cause to believe that the suspect has committed a crime, then the police should be empowered to make a formal 'arrest,' and a full incident 'search' of the person.* This scheme is justified in part upon the notion that a 'stop' and a 'frisk' amount to a mere 'minor inconvenience and petty indignity,' which can properly be imposed upon the citizen in the interest of effective law enforcement on the basis of a police officer's suspicion." *Id.* at 10-11.

---

[4] **491. Police Regulations; special traffic regulations**

(a) In addition to the provisions of this chapter, operators of motor vehicles shall observe the general traffic regulations contained in the Police Regulations set out in Title 23, and such traffic and parking regulations as may from time to time published by the Police Commissioner.

(b) Motor vehicles shall stop or proceed immediately when so ordered by members of the police force.

20 V.I.C. § 491.

389

■ The United States Supreme Court has held that stopping a car and detaining its occupants is a seizure under the Fourth Amendment. *See United States v. Hensley*, 469 U.S. 221, 226, 105 S. Ct. 675, 678, 83 L. Ed. 2d 604 (1985); *see also United States v. Velasquez*, 885 F.2d 1076, 1081 (3d Cir. 1989), *cert. denied*, 494 U.S. 1017, 110 S. Ct. 1321, 108 L. Ed. 2d 497 (1990). However, a stop to check a driver's license and registration is constitutional when it is based on an "articulable and reasonable suspicion that . . . either the vehicle or an occupant" has violated the law. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L. Ed. 2d 660 (1979); *see Velasquez*, 885 F.2d at 1081; *see also* 75 PA. CONS. STAT. ANN. § 6308(b) (Supp. 1995).

■ After a traffic stop that was justified at its inception, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation. *See United States v. Johnson*, 285 F.3d 744, 749 (8th Cir. 2002). While "reasonable suspicion" must be more than an inchoate "hunch," the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop. *See United States v. Sokolow*, 490 U.S. 1, 13, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989). In determining whether there was a basis for reasonable suspicion, a court must consider the totality of the circumstances, in light of the officer's experience. *See United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750-51, 151 L. Ed. 2d 740 (2002); *United States v. Orsolini*, 300 F.3d 724, 728 (6th Cir. 2002). Within the last year we have noted that in "the Supreme Court's most recent pronouncement on the Fourth Amendment reasonable suspicion standard, it accorded great deference to the officer's knowledge of the nature and the nuances of the type of criminal activity that he had observed in his experience, almost to the point of permitting it to be the focal point of the analysis." *United States v. Nelson*, 284 F.3d 472, 482 (3d Cir. 2002).

■ In evaluating the constitutionality of a police traffic stop, most courts agree that an objective analysis of the facts and circumstances surrounding the stop is appropriate. *See, e.g., Scott v. United States*, 436 U.S. 128, 137-38, 98 S. Ct. 1717, 1723, 56 L. Ed. 2d 168 (1978); *United States v. Whren*, 53 F.3d 371, 374, 311 U.S. App. D.C. 300 (D.C. Cir. 1995); *United States v. Hawkins*, 811 F.2d 210, 213 (3d Cir.), *cert. denied*, 484 U.S. 833, 108 S. Ct. 110, 98 L. Ed. 2d 69 (1987).

■ The Supreme Court has consistently held that an analysis of Fourth Amendment issues involves " 'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time' and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon*, 472 U.S. 463, 470-71, 105 S. Ct. 2778, 2783, 86 L. Ed. 2d 370 (1985) (internal citations omitted). "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action so long as the circumstances, viewed objectively, justify that action." *Scott*, 436 U.S. at 138, 98 S. Ct. at 1723; *see United States v. Villamonte-Marquez*, 462 U.S. 579, 584 n.3, 103 S. Ct. 2573, 2577 n.3, 77 L. Ed. 2d 22 (1983) (stating that the fact that customs officers boarding a ship pursuant to a statute authorizing a check of the vessel's documentation suspected that the vessel carried marijuana was not a violation of the Fourth Amendment); *Hawkins*, 811 F.2d at 214 ("Both the Supreme Court and this court have held that a seizure that is valid based upon the stated purpose cannot be challenged on the grounds that the seizing officers were in fact motivated by an improper purpose."); *see also Velasquez*, 885 F.2d at 1081.

■ In adopting the majority view, in *U.S. v. Johnson*, 63 F.3d 242 (3d Cir. 1995), the Third Circuit confronted with evaluating the constitutionality of a police traffic stop, concluded that the "authorization test" incorporates this objective analysis. In so doing, the Third Circuit reasoned that it "ensures that the validity of a traffic stop 'is not subject to the vagaries of police departments' policies and procedures' concerning the kinds of traffic offenses which are enforced." *United States v. Ferguson*, 8 F.3d 385, 392; *see Whren*, 53 F.3d at 376; *United States v. Scopo*, 19 F.3d 777, 784. It also instructed that "The validity of a traffic stop should be evaluated on the officer's objective legal basis for the stop and not on whether the police department routinely enforces a particular traffic law or assigns a traffic officer to make such stops." *U.S. v. Johnson*, 63 F.3d at 247.

■ Under the "authorization test"[5], materials seized following a traffic stop are admissible so long as a reasonable police officer *could* have made

---

[5] In contrast, when applying the "usual police activities" test to a traffic stop, materials seized are admissible as evidence only if a reasonable police officer *would* have made the stop in the

the stop (also known as the "could" test). These courts simply inquire whether, *at the time of the stop*, the police officer reasonably believed the defendant was committing a traffic offense, and whether the law authorized a stop for such an offense. *See Whren*, 53 F.3d at 375-76; *Scopo*, 19 F.3d at 782-84; *United States v. Jeffus*, 22 F.3d 554, 557 (4th Cir. 1994); *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994); *United States v. Roberson*, 6 F.3d 1088, 1092 (5th Cir. 1993); *Ferguson*, 8 F.3d at 389-91; *United States v. Hadfield*, 918 F.2d 987, 993 (1st Cir. 1990), *cert. denied*, 500 U.S. 936, 111 S. Ct. 2062, 114 L. Ed. 2d 466 (1991); *United States v. Hope*, 906 F.2d 254, 257-58 (7th Cir. 1990).

 However, the police are subject to a number of statutory and common law limitations. For example, officers cannot make a traffic stop without probable cause or a reasonable suspicion, based on articulable facts that a traffic violation has occurred. *See Prouse*, 440 U.S. at 661, 99 S. Ct. at 1400; *Velasquez*, 885 F.2d at 1081; *see also* 75 PA. CONS. STAT. ANN. § 6308(b). Thus, in evaluating the constitutionality of a traffic stop, a court is free to examine the sufficiency of the reasons for the stop as well as the officer's credibility. *U.S. v. Johnson*, 63 F.3d at 247.

Furthermore, a traffic stop must be reasonably related in scope to the justification for the stop. *See Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 3149, 82 L. Ed. 2d 317 (1984); *Bloomfield*, 40 F.3d at 915; *Scopo*, 19 F.3d at 785; *United States v. Hassan El*, 5 F.3d 726, 731 (4th Cir. 1993), *cert. denied*, 511 U.S. 1006, 114 S. Ct. 1374, 128 L. Ed. 2d 50 (1994). To justify a greater intrusion unrelated to the traffic stop, the totality of the circumstances known to the police officer must establish reasonable suspicion or probable cause to support the intrusion. *See United States v. Ramos*, 42 F.3d 1160, 1163 (8th Cir. 1994); *United States v. Hernandez*, 872 F. Supp. 1288, 1293-94 (D.Del.1994). Clearly, a lawful traffic stop is not "carte blanche" for an officer to engage in other unjustified action. *U.S. v. Johnson*, 63 F.3d at 247.

The Court finds, therefore, that in applying the "authorization test" that there was reasonable basis under the circumstances for Officer Wright to stop the vehicle to investigate the traffic violations of speeding and failure to make a full stop at the stop sign at the intersection of Queen Mary and

absence of an invalid purpose. These courts inquire not only into the legality of the stop, but also into its conformity with regular police practices.

Concordia. Accordingly, the police traffic stop passes constitutional muster as a valid traffic stop.

## Constitutionality of the Arrest of the Defendants at the Traffic Stop Scene

Although there was inconsistent testimony throughout the hearing with respect to at what point the defendants were arrested, upon questioning by the Court to ascertain the exact time of arrest, Officer Wright testified that the passengers [defendants] were all arrested after the first weapon was found. Hence, the Court must determine whether the arrest upon discovery of the first weapon was supported by probable cause.

 Probable cause exists when at the moment an arrest is made officers have "facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information" that would sufficiently "warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 225, 13 L. Ed. 2d 142 (1964); *see also United States v. Jones*, 72 F.3d 1324, 1331 (7th Cir. 1995). This *"flexible, commonsense" probable cause standard* rests on whether a "man of reasonable caution" would believe that the accused has committed a crime; it does not require that this *"belief be correct or more likely true than false."* *Texas v. Brown*, 460 U.S. 730, 742, 103 S. Ct. 1535, 1543, 75 L. Ed. 2d 502 (1983). Probable cause exists where the facts and circumstances within the officer's knowledge arc sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. *United States v. Cruz*, 910 F.2d 1072, 1076 (3rd Cir. 1990).

 The language under 23 V.I.C. § 488 is clear concerning an officer encounter with someone who has a firearm. Prior to arrest, *and* in the absence of evidence supporting probable cause that other criminal activity is afoot, the police must inquire of the person as to whether he has a license to posses a firearm. Section 488 states:

> (a) Any law enforcement officer who, in the light of his observations, information and experience, has a reasonable belief that (i) a person may be wearing, carrying, or transporting a firearm in violation of section 454 of this title, (ii) by virtue of his possession of a firearm, such person is or may be presently dangerous to the officer or to others,

(iii) it is impracticable, under the circumstances, to obtain a search warrant; and (iv) it is necessary for the officer's protection or the protection of others to take swift measures to discover whether such person is, in fact, wearing, carrying, or transporting a firearm, such officer may:

**(1)** approach the person and identify himself as a law enforcement officer:

**(2)** request the person's name and address, and, if the person is in a vehicle, his license to operate the vehicle, and the vehicle's registration; and

**(3)** ask such questions and request such explanations as may be reasonably calculated to determine whether the person is, in fact, unlawfully wearing, carrying, or transporting a firearm in violation of section 454 of this title; and

**(4)** if the person does not give an explanation which dispels, the reasonable belief which he had, he may conduct a search of the person, limited to a patting or frisking of the person's clothing in search of a firearm. The police officer in acting under this section shall do so with due regard to all circumstances of the occasion, including but not limited to the age, appearance, physical condition, manner and sex of the person approached.

**(b)** In the event that the officer discovers the person to be wearing, earning, or transporting a firearm, he may demand that the person produce evidence that he is entitled to so wear, carry, or transport the firearm pursuant to section 454 of this title. If the person is unable to produce such evidence, the officer may then seize the firearm and arrest the person.

**(c)** Nothing in this section shall be construed to limit the right of any police officer to make any other type of search, seizure, and arrest which may be permitted by law.

Any police officer sued in a civil action for conducting a search or seizure pursuant to this section which is alleged to be unreasonable and unlawful shall, upon his request, be defended in said action and any appeals therefrom, by the Attorney General.

Every police officer who conducts a search or seizure pursuant to this section shall, within twenty-four hours after such search or seizure, file a written report with the U.S. Virgin Islands Police Department

(V.I.P.D.) describing the circumstances surrounding the search or seizure and the reasons therefore on a form prescribed by the Police Commissioner. Such report shall include the name of the person searched. 23 V.I.C. § 488.

 In this matter, however, the officers never inquired as to whether the defendants had a license to carry a firearm prior to the arrest. The record is clear, the Defendants were arrested, taken to the police station and then it was determined that they had no license to possess a firearm. Hence, although the Officers had statutory authority, pursuant to 23 V.I.C. § 488 to investigate the defendants' lawful possession of the weapons that had been discovered through lawful police activity, there is absolutely no evidence on the record that the Officers sought to initiate the inquiry *prior* to the Defendants' arrest at the traffic stop scene. Further, there is no additional evidence on the record that the Officers were apprised of any facts that lead them to the reasonable belief that defendants did not possess the firearms lawfully upon discovery of the weapons at the time of the traffic stop. The record reflects merely that it was determined at the Station upon checking with the Firearms Division that neither of the defendants had a license to possess a firearm.

Furthermore, even though the People argue in its brief that under the totality of the circumstances criminal activity was afoot, the record absolutely fails to present any testimony from the Officers based upon their enforcement experience supporting that they had — prior to arresting the Defendants — an articulable basis to reasonably believe that any criminal activity was afoot. Under the totality of the circumstances, therefore, this Court finds that the Officers lacked probable cause to arrest the Defendants in this matter.

## CONCLUSION

In conclusion, this Court holds, consistent with the Third Circuit's decision in *U.S. v. Ubiles*, and Title 23 Section 488 of the Virgin Islands Code, that the warrantless arrest of defendants — without probable cause that the weapons were unlawfully possessed or without any other evidence to support probable cause that other criminal activity was afoot — was unreasonable under the totality of the circumstances and that the weapons and ammunition and all other evidence uncovered subsequent to the unlawful arrest are hereby suppressed.